1   SETH E. FREILICH (STATE BAR NO. 217321)
    sfreilich@orrick.com
2   ORRICK, HERRINGTON & SUTCLIFFE LLP
    777 South Figueroa Street, Suite 3200
3   Los Angeles, California 90017-5855
    Telephone:  (213) 629-2020
4   Facsimile:   (213) 612-2499

5   JOSEPH A. CALVARUSO (*Pro Hac Vice*)
    jcalvaruso@orrick.com
6   RODGER A. SADLER (*Pro Hac Vice*)
    rsadler@orrick.com
7   RICHARD MARTINELLI (*Pro Hac Vice*)
    rmartinelli@orrick.com
8   ORRICK, HERRINGTON & SUTCLIFFE LLP
    666 Fifth Avenue
9   New York, New York 10036
    Telephone:  (212) 506-5000
10  Facsimile:   (212) 506-5151

11  Attorneys for Defendant and Counterclaimant
    Canon U.S.A., Inc. and Defendant Canon Inc.
12

13              UNITED STATES DISTRICT COURT
14
                CENTRAL DISTRICT OF CALIFORNIA
15
                      WESTERN DIVISION
16

17
    CALIFORNIA INSTITUTE OF              Case No.  CV 08-8637 VBF (VBKx)
18  TECHNOLOGY
                                         **CANON U.S.A., INC. AND CANON**
19             Plaintiff,                **INC.'S ANSWER TO PLAINTIFF'S**
                                         **FIRST AMENDED COMPLAINT**
20        v.                             **AND CANON U.S.A.'S**
                                         **COUNTERCLAIMS**
21  CANON U.S.A., INC., CANON INC.,
    NIKON, INC., NIKON CORP.,            **DEMAND FOR JURY TRIAL**
22  OLYMPUS AMERICA, INC.,
    OLYMPUS CORP., PANASONIC             Judge:  Hon. Valerie Baker Fairbank
23  CORP. OF NORTH AMERICA,
    PANASONIC CORP., SONY
24  ELECTRONICS, INC., SONY CORP.,
    SAMSUNG ELECTRONICS
25  AMERICA, INC., AND SAMSUNG
    ELECTRONICS CO., LTD
26
               Defendants.
27

28

OHS West:260677618.3

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

FILED 2009 JUN 23 PM 3:45 CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. LOS ANGELES BY

1    Defendants Canon U.S.A., Inc. ("Canon U.S.A.") and Canon Inc. hereby

2    submit their Answer, including affirmative defenses, to Plaintiff's First Amended

3    Complaint filed by California Institute of Technology ("Caltech" or "Plaintiff"),

4    and Canon U.S.A.'s counterclaims thereto, as follows:

5                          **JURISDICTION AND VENUE**

6        1.    Canon U.S.A. and Canon Inc. admit that Caltech purports to bring this

7    action under the patent laws of the United States and that this Court has subject

8    matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), and 35 U.S.C. § 271

9    *et. seq.*  Canon U.S.A. and Canon Inc., however, deny the merits of the claims

10   asserted against them.

11       2.    Canon U.S.A. and Canon Inc. admit that they are subject to personal

12   jurisdiction in this district.  Canon U.S.A. and Canon Inc. lack knowledge or

13   information sufficient to form a belief regarding the truth of the allegations in

14   paragraph 2 with respect to Nikon, Inc., Nikon Corp., Olympus America, Inc.,

15   Olympus Corp., Panasonic Corp. of North America, Panasonic Corp., Sony

16   Electronics, Inc., Sony Corp., Samsung Electronics America, Inc. and Samsung

17   Electronics Co., Ltd. (collectively, "Other Defendants"), and therefore deny those

18   allegations.  Canon U.S.A. and Canon Inc. deny the remaining allegations in

19   paragraph 2.

20       3.    Canon U.S.A. admits that venue is proper in this district as to Canon

21   U.S.A. and Canon Inc. admits that venue is proper in this district as to Canon Inc.,

22   but both deny having committed any wrongful acts upon which venue is allegedly

23   based.  Canon U.S.A. and Canon Inc. lack knowledge or information sufficient to

24   form a belief regarding the truth of the allegations in paragraph 3 with respect to

25   Other Defendants and therefore denies those allegations.

26                              **THE PARTIES**

27       4.    Canon U.S.A. and Canon Inc. lack knowledge or information

28   sufficient to form a belief regarding the truth of the allegations in paragraph 4 and

OHS West:260677618.3

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

1    therefore deny those allegations.

2        5.    Canon U.S.A. and Canon Inc. admit that Canon U.S.A., Inc. is a

3    corporation organized under the laws of New York, having its principal place of

4    business at One Canon Plaza, Lake Success, New York 11042-1113.  Canon U.S.A.

5    and Canon Inc. further admit that Canon U.S.A. is authorized to do business in

6    California and may be served by serving its registered agent, CT Corporation

7    System, 818 West Seventh St., Los Angeles, CA 90017.

8        6.    Canon U.S.A. and Canon Inc. admit that Canon Inc. is a corporation

9    organized under the laws of Japan, having its principal place of business at 30-2

10   Shimomaruko 3 Chome, OHTA-KU, Tokyo 146-8501, Japan.  Canon U.S.A. and

11   Canon Inc. further admit that Canon Inc. is a nonresident that engages in business

12   in California, and that Canon Inc. does not maintain a regular place of business in

13   California or a designated agent for service of process in California.  Canon U.S.A.

14   and Canon Inc. admit that Canon Inc. may be served with process in Japan pursuant

15   to the Hague Convention on the Service Abroad of Judicial and Extrajudicial

16   Documents.

17       7.    Canon U.S.A. and Canon Inc. lack knowledge or information

18   sufficient to form a belief regarding the truth of the allegations in paragraph 7 and

19   therefore deny those allegations.

20       8.    Canon U.S.A. and Canon Inc. lack knowledge or information

21   sufficient to form a belief regarding the truth of the allegations in paragraph 8 and

22   therefore deny those allegations.

23       9.    Canon U.S.A. and Canon Inc. lack knowledge or information

24   sufficient to form a belief regarding the truth of the allegations in paragraph 9 and

25   therefore deny those allegations.

26       10.   Canon U.S.A. and Canon Inc. lack knowledge or information

27   sufficient to form a belief regarding the truth of the allegations in paragraph 10 and

28   therefore deny those allegations.

- 2 -

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

11.    Canon U.S.A. and Canon Inc. lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 11 and therefore deny those allegations.

12.    Canon U.S.A. and Canon Inc. lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 12 and therefore deny those allegations.

13.    Canon U.S.A. and Canon Inc. lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 13 and therefore deny those allegations.

14.    Canon U.S.A. and Canon Inc. lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 14 and therefore deny those allegations.

15.    Canon U.S.A. and Canon Inc. lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 15 and therefore deny those allegations.

16.    Canon U.S.A. and Canon Inc. lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 16 and therefore deny those allegations.

## PATENTS-IN-SUIT

17.    Canon U.S.A. and Canon Inc. admit that U.S. Patent No. 5,990,506 (the " '506 patent"), entitled "Active Pixel Sensors with Substantially Planarized Color Filtering Elements," states on its face that it was issued on November 23, 1999.  Canon U.S.A. and Canon Inc. further admit that a copy of the '506 patent is attached to Plaintiff's First Amended Complaint as Exhibit A.  Canon U.S.A. and Canon Inc. lack knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in paragraph 17 and therefore deny those allegations.

18.    Canon U.S.A. and Canon Inc. deny that U.S. Patent No. 6,456,326 (the

- 3 -

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

1    " '326 patent") is entitled "Single Chip Camera Having Double Sampling

2    Operation." Canon U.S.A. and Canon Inc. admit that the '326 patent states on its

3    face that it was issued on September 24, 2002. Canon U.S.A. and Canon Inc.

4    further admit that a copy of the '326 patent is attached to Plaintiff's First Amended

5    Complaint as Exhibit B. Canon U.S.A. and Canon Inc. lack knowledge or

6    information sufficient to form a belief regarding the truth of the remaining

7    allegations in paragraph 18 and therefore deny those allegations.

8         19.    Canon U.S.A. and Canon Inc. admit that U.S. Patent No. 6,549,235

9    (the " '235 patent"), entitled "Single Substrate Camera Device with CMOS Image

10    Sensor," states on its face that it was issued on April 15, 2003. Canon U.S.A. and

11    Canon Inc. further admit that a copy of the '235 patent is attached to Plaintiff's

12    First Amended Complaint as Exhibit C. Canon U.S.A. and Canon Inc. lack

13    knowledge or information sufficient to form a belief regarding the truth of the

14    remaining allegations in paragraph 19 and therefore deny those allegations.

15         20.    Canon U.S.A. and Canon Inc. admit that U.S. Patent No. 6,555,842

16    (the " '842 patent"), entitled "Active Pixel Sensor with Intra-pixel Charge

17    Transfer," states on its face that it was issued on April 29, 2004. Canon U.S.A. and

18    Canon Inc. further admit that a copy of the '842 patent is attached to Plaintiff's

19    First Amended Complaint as Exhibit D. Canon U.S.A. and Canon Inc. lack

20    knowledge or information sufficient to form a belief regarding the truth of the

21    remaining allegations in paragraph 20 and therefore deny those allegations.

22         21.    Canon U.S.A. and Canon Inc. admit that U.S. Patent No. 6,570,617

23    (the " '617 patent"), entitled "CMOS Active Pixel Sensor Type Imaging System on

24    a Chip," states on its face that it was issued on May 27, 2003. Canon U.S.A. and

25    Canon Inc. further admit that a copy of the '617 patent is attached to Plaintiff's

26    First Amended Complaint as Exhibit E. Canon U.S.A. and Canon Inc. lack

27    knowledge or information sufficient to form a belief regarding the truth of the

28    remaining allegations in paragraph 21 and therefore deny those allegations.

OHS West:260677618.3

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

1      22.    Canon U.S.A. and Canon Inc. admit that U.S. Patent No. 6,744,068

2  (the " '068 patent"), entitled "Active Pixel Sensor with Intra-pixel Charge

3  Transfer," states on its face that it was issued on June 1, 2004.  Canon U.S.A. and

4  Canon Inc. further admit that a copy of the '068 patent is attached to Plaintiff's

5  First Amended Complaint as Exhibit F.  Canon U.S.A. and Canon Inc. lack

6  knowledge or information sufficient to form a belief regarding the truth of the

7  remaining allegations in paragraph 22 and therefore deny those allegations.

8      23.    Canon U.S.A. and Canon Inc. admit that U.S. Patent No. 5,949,483

9  (the " '483 patent"), entitled "Active Pixel Sensor Array with Multiresolution

10  Readout," states on its face that it was issued on September 7, 1999.  Canon U.S.A.

11  and Canon Inc. further admit that a copy of the '483 patent is attached to Plaintiff's

12  First Amended Complaint as Exhibit G.  Canon U.S.A. and Canon Inc. lack

13  knowledge or information sufficient to form a belief regarding the truth of the

14  remaining allegations in paragraph 23 and therefore deny those allegations.

15      24.    Canon U.S.A. and Canon Inc. admit that U.S. Patent No. 6,606,122

16  (the " '122 patent"), entitled "Single Chip Camera Active Pixel Sensor," states on

17  its face that it was issued on August 12, 2003.  Canon U.S.A. and Canon Inc.

18  further admit that a copy of the '122 patent is attached to Plaintiff's First Amended

19  Complaint as Exhibit H.  Canon U.S.A. and Canon Inc. lack knowledge or

20  information sufficient to form a belief regarding the truth of the remaining

21  allegations in paragraph 24 and therefore deny those allegations.

22      25.    Canon U.S.A. and Canon Inc. deny that U.S. Patent No. 6,943,838 (the

23  " '838 patent") is entitled "Active Pixel Sensor Pixel Having a Photodetector

24  Whose Output Is Coupled to and Output Transistor Gate." Canon U.S.A. and

25  Canon Inc. admit that the '838 patent states on its face that it was issued on

26  September 13, 2005.  Canon U.S.A. and Canon Inc. further admit that a copy of the

27  '838 patent is attached to Plaintiff's First Amended Complaint as Exhibit I.  Canon

28  U.S.A. and Canon Inc. lack knowledge or information sufficient to form a belief

- 5 -

1  regarding the truth of the remaining allegations in paragraph 25 and therefore deny

2  those allegations.

3      26.    Canon U.S.A. and Canon Inc. admit that U.S. Patent No. 6,825,059

4  (the " '059 patent"), entitled "Active Pixel Sensor Array with Electronic

5  Shuttering," states on its face that it was issued on November 30, 2004.  Canon

6  U.S.A. and Canon Inc. further admit that a copy of the '059 patent is attached to

7  Plaintiff's First Amended Complaint as Exhibit J.  Canon U.S.A. and Canon Inc.

8  lack knowledge or information sufficient to form a belief regarding the truth of the

9  remaining allegations in paragraph 26 and therefore deny those allegations.

10      27.    Canon U.S.A. and Canon Inc. admit that U.S. Patent No. 7,369,166

11  (the " '166 patent"), entitled "Single Substrate Camera Device with CMOS Image

12  Sensor" states on its face that it was issued on May 6, 2008.  Canon U.S.A. and

13  Canon Inc. further admit that a copy of the '166 patent is attached to Plaintiff's

14  First Amended Complaint as Exhibit K.  Canon U.S.A. and Canon Inc. lack

15  knowledge or information sufficient to form a belief regarding the truth of the

16  remaining allegations in paragraph 27 and therefore deny those allegations.

17      28.    Canon U.S.A. and Canon Inc. admit that Plaintiff's First Amended

18  Complaint collectively refers to the '506 patent, the '326 patent, the '235 patent, the

19  '842 patent, the '617 patent, the '068 patent, the '483 patent, the '122 patent, the

20  '838 patent, the '059 patent and the '166 patent as "the Caltech Patents."

21      29.    Canon U.S.A. and Canon Inc. lack knowledge or information

22  sufficient to form a belief regarding the truth of the allegations in paragraph 29 and

23  therefore deny those allegations.

24                    **PATENT INFRINGEMENT**

25      30.    Canon U.S.A. and Canon Inc. restate and incorporate the replies set

26  forth in paragraph 1 through 29 of this Answer.

27      31.    Canon U.S.A. and Canon Inc. deny the allegations in paragraph 31.

28      32.    Canon U.S.A. and Canon Inc. deny the allegations in paragraph 32.

- 6 -

33.    Canon U.S.A. and Canon Inc. deny the allegations in paragraph 33.

34.    Canon U.S.A. and Canon Inc. deny the allegations in paragraph 34.

35.    Canon U.S.A. and Canon Inc. deny the allegations in paragraph 35.

36.    Canon U.S.A. and Canon Inc. lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 36 and therefore deny those allegations.

37.    Canon U.S.A. and Canon Inc. lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 37 and therefore deny those allegations.

38.    Canon U.S.A. and Canon Inc. lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 38 and therefore deny those allegations.

39.    Canon U.S.A. and Canon Inc. lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 39 and therefore deny those allegations.

40.    Canon U.S.A. and Canon Inc. lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 40 and therefore deny those allegations.

41.    Canon U.S.A. and Canon Inc. lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 41 and therefore deny those allegations.

42.    Canon U.S.A. and Canon Inc. lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 42 and therefore deny those allegations.

43.    Canon U.S.A. and Canon Inc. lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 43 and therefore deny those allegations.

44.    Canon U.S.A. and Canon Inc. lack knowledge or information

- 7 -

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

sufficient to form a belief regarding the truth of the allegations in paragraph 44 and therefore deny those allegations.

45.    Canon U.S.A. and Canon Inc. lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 45 and therefore deny those allegations.

46.    Canon U.S.A. and Canon Inc. lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 46 and therefore deny those allegations.

47.    Canon U.S.A. and Canon Inc. lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 47 and therefore deny those allegations.

48.    Canon U.S.A. and Canon Inc. lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 48 and therefore deny those allegations.

49.    Canon U.S.A. and Canon Inc. lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 49 and therefore deny those allegations.

50.    Canon U.S.A. and Canon Inc. lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 50 and therefore deny those allegations.

51.    Canon U.S.A. and Canon Inc. deny the allegations in paragraph 51 with respect to Canon U.S.A. and Canon Inc.  Canon U.S.A. and Canon Inc. lack knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in paragraph 51 and therefore deny those allegations.

52.    Canon U.S.A. and Canon Inc. deny the allegations in paragraph 52 with respect to Canon U.S.A. and Canon Inc.  Canon U.S.A. and Canon Inc. lack knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in paragraph 52 and therefore deny those allegations.

- 8 -

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

53.   Canon U.S.A. and Canon Inc. deny the allegations in paragraph 53 with respect to Canon U.S.A. and Canon Inc.  Canon U.S.A. and Canon Inc. lack knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in paragraph 53 and therefore deny those allegations.

## CANON U.S.A.'S AND CANON INC.'S FIRST AFFIRMATIVE DEFENSE

### (Noninfringement)

54.   Canon U.S.A. and Canon Inc. are not infringing and have not infringed, either directly, contributorily or by inducement, any claim of the '506 patent, the '326 patent, the '235 patent, the '842 patent, the '617 patent, the '068 patent, the '483 patent, the '122 patent, the '838 patent, the '059 patent or the '166 patent (collectively the "Patents-In-Suit"), either literally or under the doctrine of equivalents.

## CANON U.S.A.'S AND CANON INC.'S SECOND AFFIRMATIVE DEFENSE

### (Invalidity)

55.   On information and belief, all of the claims of the Patents-In-Suit are invalid for failure to comply with one or more of the requirements of 35 U.S.C. §§ 101, 102, 103 and 112.

## CANON U.S.A.'S AND CANON INC.'S THIRD AFFIRMATIVE DEFENSE

### (Laches and Waiver)

56.   On information and belief, Caltech is barred in whole or in part from asserting the Patents-In-Suit against Canon U.S.A. and Canon Inc. by the equitable doctrines of laches, acquiescence or waiver, or any combination thereof.

## CANON U.S.A.'S AND CANON INC.'S FOURTH AFFIRMATIVE DEFENSE

### (Unenforceability/Inequitable Conduct)

57.   All of the Patents-In-Suit are void and unenforceable because the named inventor(s), the prosecuting attorney(s), and/or other individual(s) having a

- 9 -

1   duty of candor and good faith dealing with the United States Patent and Trademark

2   Office (the "USPTO") (collectively "Applicants") breached their duty in the

3   prosecution of the applications that led to the issuance of the Patents-In-Suit by

4   failing to properly disclose to the USPTO material information and by making false

5   and misleading statements, with intent to deceive the USPTO, either: (1) directly in

6   prosecuting the Patents-In-Suit; or (2) indirectly in prosecuting patents related to

7   the Patents-In-Suit (the "Parent Patents"), through the doctrine of infectious

8   unenforceability.

9           58.    The prosecuting attorney(s) and/or other individual(s) associated with

10  the filing and/or prosecution of the Parent Patents and the Patents-In-Suit include,

11  at least, the named inventors of the Patents-In-Suit, patent attorneys Robert M.

12  Wallace and Scott C. Harris, and, based on information and belief, at least one or

13  more employees of Caltech who were responsible for overseeing the filing and/or

14  prosecution of the Parent Patents and the Patents-In-Suit.

15          59.    Under 37 C.F.R. § 1.56, each individual associated with the filing

16  and/or prosecution of a patent application has, during the pendency of that

17  application, a duty of candor and good faith in dealing with the USPTO, which

18  includes a duty to disclose to the USPTO all information known to those

19  individuals to be material to the patentability of the pending claims.

20          60.    All the named inventors of the Parent Patents and the Patents-In-Suit

21  expressly acknowledged their duty of disclosure as defined by 37 C.F.R. § 1.56 to

22  disclose all information known to them which would be material to the patentability

23  in declarations filed with the USPTO.

24          61.    Under 37 C.F.R. § 10.18(b), which was in effect during the pendency

25  of each of the Patents-In-Suit and the Parent Patents, patent attorneys and patent

26  agents involved in the filing and/or prosecution of a patent application were under a

27  duty to make a reasonable inquiry as to truth and propriety before submitting a

28  paper to the USPTO.

                                        - 10 -

OHS West:260677618.3

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

62.    Actions and omissions by Applicants in the prosecution of U.S. Patent No. 5,471,515 ("the '515 patent"), U.S. Patent No. 6,101,232 ("the '232 patent"), and U.S. Patent No. 5,841,126 ("the '126 patent"); U.S. Patent No. 6,166,768 ("the '768 patent") and U.S. Patent No. 6,486,503 ("the '503 patent") render the Patents-In-Suit unenforceable under the doctrine of infectious unenforceability.

I.    **AFFIRMATIVE MISREPRESENTATIONS TO THE USPTO.**

A.    **Kemeny Declaration (The '515 and '232 Patents).**

63.    On September 29, 1994, Sabrina Kemeny, a named co-inventor of the '515 patent, executed a declaration in support of the '515 patent application and in response to the USPTO's rejection of the pending application claim. [Exhibit A hereto (the "Kemeny Decl.")]

64.    After describing her academic achievements and experience in the field of the art, Kemeny averred in her declaration that "[a]ll CCD imagers have been limited by the necessity of sharing a common read-out circuit among plural pixels." [Exhibit A hereto, at 1]. Kemeny also averred:

> the present invention … provides the first CCD imaging circuit having one read-out circuit for each pixel or photogate. Nothing in the art would suggest one read-out circuit per photogate…. This combination of features makes possible for the first time the one-pixel-per-readout circuit structure of the invention and was first disclosed in the applicant's specification.

[Exhibit A hereto, at 2].

65.    Articles authored by Kemeny and/or other '515 patent named co-inventors Eric R. Fossum and Sunetra K. Mendis show that prior to the Kemeny Decl., Kemeny and the other named co-inventors of the '515 patent were aware of prior art publications teaching one read-out circuit for each pixel. Examples of these articles include, but are not limited to:

A.    Mendis, Sunetra K., Kemeny, Sabrina E., Gee, Russell C., Pain Bedabrata, Kim Quiesup, and Fossum, Eric. R., *Progress in CMOS Active Pixel Image Sensors*, SPIE (1994) (the "1994

- 11 -

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

1    Mendis Article") [Exhibit B hereto];

2    B.    Fossum, Eric R., *Active Pixel Sensors: Are CCDs Dinosaurs?*,

3          Proc. SPIE, col. 1900, pp. 2-14, 1993 (the "Fossum Dinosaurs

4          Article") [Exhibit C hereto];

5    C.    Kemeny, Sabrina E., Eid, El-Sayed, Mendis, Sunetra, and

6          Fossum, Eric R., *Update on focal-plane image processing*

7          *research*, SPIE Vol. 1447 Charge-Coupled Devices and Solid

8          State Optical Sensors II (1991) (the "Kemeny Focal-Plane

9          Article") [Exhibit D hereto];

10   D.    Fossum, Eric R., *Architectures for Focal-plane Image*

11         *Processing*, Opt. Eng., vol. 28(8), 865-871 (1989) (the "1989

12         Fossum Architecture Article) [Exhibit E hereto].

13       66.    The 1994 Mendis Article, which also lists Kemeny and Fossum as

14   authors, defines an active pixel sensor as "an image sensor technology that has one

15   or more active transistors within the pixel unit cell".  The 1994 Mendis Article

16   further cites to at least five references in its "Introduction" that disclose such a

17   structure and that qualify as prior art to the '515 patent application and the Patents-

18   In-Suit.

19       67.    The Fossum Dinosaurs Article, authored by Fossum, similarly

20   identifies numerous prior art references in its "State-Of-The-Art" section disclosing

21   active pixel sensors having one readout circuit per pixel.

22       68.    The Kemeny Focal-Plane Article, which also lists Mendis and Fossum

23   as authors, describes research into incorporating image processing into CCD image

24   sensors, referred to as "Focal-plane image processing."  The Kemeny Focal-Plane

25   Article provides experimental results obtained with imaging devices made by the

26   group and cites to the 1989 Fossum Architecture Article.

27       69.    The 1989 Fossum Architecture Article describes the use of a

28   CCD/CMOS process, the combination of a photoreceptor and processing element in

1    a combined pixel unit cell and that the processing element can include

2    buffer/amplifier functions for the pixel unit cell or more sophisticated functions.

3         70.    On information and belief, in view of the foregoing publications by the

4    named inventor of the '515 patent, Kemeny knew of the foregoing teachings in the

5    prior art.  The Kemeny Decl., therefore, knowingly contained material false and

6    misleading statements submitted with an intent to deceive the USPTO.

7         71.    Through an October 11, 1994 Amendment, Applicants submitted and

8    relied on the Kemeny Decl. to argue for the patentability of the then pending '515

9    patent application claims.

10        72.    On information and belief, the Applicants committed inequitable

11   conduct by submitting and relying on the false and misleading Kemeny Decl. in the

12   October 11, 1994 Amendment, with an intent to deceive the USPTO in order to

13   obtain the issuance of the '515 patent.  The false statements were material to the

14   examination of the application that issued as the '515 patent.

15        73.    Through a November 16, 1995 Amendment, Applicants relied on the

16   Kemeny Decl. to argue for the patentability of the then pending '232 patent

17   application claims.

18        74.    On information and belief, the Applicants committed inequitable

19   conduct by submitting and relying on the false and misleading Kemeny Decl., in

20   the November 16, 1995 Amendment, with an intent to deceive the USPTO in order

21   to obtain the issuance of the '232 patent.  The false statements were material to the

22   examination of the application that issued as the '232 patent.

23        **B.**    **<u>Misleading Claim to Priority (the '126 and '483 Patents).</u>**

24        75.    The '126 patent is a continuation-in-part of the '232 patent and claims

25   priority to the '232 patent and a provisional patent application, 60/010,678 filed on

26   January 26, 1996.

27        76.    In an October 28, 1997 Office Action, the claims of the '126 patent

28   application were rejected pursuant to 35 U.S.C. 102(e) over U.S. Patent No.

- 13 -

1    5,461,425, which was filed on October 24, 1994.

2        77.    In response, in an amendment dated January 28, 1998, the Applicants

3    argued that claim 1 of the '126 patent was entitled to the benefit of the filing date of

4    '515 patent.  Specifically, it was stated that:

> Claim 1 is entitled to the priority date of the parent
> (January 28, 1994) because the parent includes a substrate
> having an array of pixels and a control area. The pixels
> are disclosed to be light collecting elements which each
> receive light and store electronic information in an
> amount indicative of an amount of light received during
> an integration period (see, e.g., column 3, lines 22-24 of
> the above '515 patent). The control area includes a
> readout circuit (element 70 of the '515 patent). The
> circuitry in the control area is CMOS (column 4, lines 59-
> 61), and the pixel area is compatible with CMOS (column
> 4, lines 40-42). The timing element is that which controls,
> e.g., the integration period.

12   [January 28, 1998 Amendment at 2-3].

13       78.    Contrary to the Applicants assertions, the '515 patent does not disclose

14   (1) a timing element; (2) a control area outside of the pixel area, or (3) that the

15   readout circuitry is a "control area".

16       79.    With regard to the '483 patent, in response to a rejection by the

17   USPTO, in an Amendment on October 7, 1998 the Applicants intentionally made

18   false statements and misleadingly argued that Mandl (prior art cited in an

19   obviousness rejection of the then pending claims 1-4, 6-7, 12-13, 16-17, and 21)

20   "did not constitute prior art ... [because it] was filed later than the priority date of

21   the claim limitation on active pixel sensor cited in Claims 1-4, 6-7, 12-13, 16-

22   17, and 21, which is January 28, 1994, based on the parent application No.

23   08/188,032, now U.S. Patent No. 5,471,515." ('483 Patent File History, October 7,

24   1998 Amendment (emphasis in original)).

25       80.    However, then pending claims 1-4, 6-7, 12-13, 16-17, and 21 lacked

26   support in the '515 patent and, as a result, were not entitled to the filing date of the

27   '515 patent as a priority date.  Therefore, contrary to the argument in the

28   Amendment, Mandl could not be predated and instead stood as material prior art to

- 14 -

OHS West:260677618.3

1   the claims of the '483 patent application.

2      81.    On information and belief, the Applicants committed inequitable

3   conduct by making these statements with intent to deceive the USPTO as to the

4   correct priority date for the claims of the '126 patent and '483 patent and, thereby

5   avoid invalidating prior art.

6      **C.    Misleading Arguments for Patentability (the '506 Patent).**

7      82.    The '506 patent claims priority to provisional patent application no.

8   60/013,700, which was filed on March 20, 1996.

9      83.    On February 19, 1999, in response to a USPTO rejection, Applicants

10  admitted that the prior art references applied by the USPTO individually taught the

11  features recited in certain claims of the '506 patent application, an active pixel

12  sensor array and a color filter, but argued that there was not motivation to combine

13  these features.

14     84.    The Fossum Dinosaurs article, however, expressly discusses a prior art

15  reference that discloses an active pixel sensor with a color filter array.

16     85.    On information and belief, in view of the foregoing, Applicants

17  committed inequitable conduct in attempting to obtain allowance of the '506 patent

18  by stating to the USPTO with intent to deceive that there was no motivation to

19  combine active pixel sensors with color filter arrays.

20  **II.    FAILURE TO CITE MATERIAL INFORMATION TO THE**

21  **USPTO.**

22     **A.    Prior Art Materials.**

23     86.    Applicants authored numerous publications that are either material

24  prior art or that cite to prior art publications material to Applicants' inventions.

25  Applicants failed to cite these highly material, non-cumulative prior art references

26  in the applications of both the Patents-In-Suit, as well as in the applications of the

27  Parent Patents.

28     87.    Publications authored by the named inventors in the 1980s and 1990s

- 15 -

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

1  describe the alleged inventions disclosed and claimed by the Patents-In-Suit.  These

2  same publications also identify a number of publications authored by third-parties

3  that are material to inventions claimed in the Patents-In-Suit.  Examples of

4  publications authored by the Inventors that are material prior art to the Patent-In-

5  Suit or cite to material prior art, include, but are not limited to:

6        A.    The 1994 Mendis Article;

7        B.    The Fossum Dinosaurs Article;

8        C.    The Kemeny Focal-Plane Article;

9        D.    The 1989 Fossum Architecture Article;

10        E.    Fossum, Eric R., *On-Chip Focal-Plane Image Processing*, Proc.

11        of 1991 Symposium on Advanced Image-Acquisition

12        Technology (SAIT91),pp. 48-56, T. Ando, ed., Tokyo, Japan,

13        (November 1991) (the "1991 Fossum Focal-Plane Image

14        Processing Article") [Exhibit F hereto];

15        F.    Fossum, Eric R., *Future Directions In Focal-Plane Signal*

16        *Processing For Space-Borne Scientific Imagers*, Proc. SPIE vol.

17        1541, pp. 62-67 (1991) (the "1991 Fossum Future Directions

18        Article") [Exhibit G hereto];

19        G.    Eid, E-S, et al., *CMOS Active Pixel Image Sensors for Low Cost*

20        *Application*, ICECS '94, December 1994, Cairo, Egypt (the

21        "1994 Eid Article"), co-authored by named inventor Fossum

22        [Exhibit H hereto];

23        H.    Fossum, Eric R., *Ultra Low Power Imaging Systems Using*

24        *CMOS Image Sensor Technology*, SPIE Vol. 2267, pp. 107 -

25        111 (1994) (the "Fossum Ultra Low Power Article") [Exhibit I

26        hereto];

27        I.    Fossum, Eric R., *Assessment of Image Sensor Technology for*

28        *Future NASA Missions*, SPIE vol. 2172, pp. 1 – 16 (1994) (the

OHS West:260677618.3

1    "Fossum Future NASA Missions Article") [Exhibit J hereto];

2    J.    S. Mendis, B. Pain, R. Nixon, and E.R. Fossum, *Design Of A*
3    *Low-Light-Level Image Sensor With On-Chip Sigma-Delta*
4    *Analog-To-Digital Conversion*, CCD's and Optical Sensors III,
5    Proc. SPIE vol. 1900, pp. 31-39 (1993) (the"Mendis 1993 A-to-
6    D Article") [Exhibit K hereto];

7    K.    Fossum, Eric R., *CMOS Image Sensors: Electronic Camera on*
8    *a Chip*, IEEE 1.3.1 – 1.3.9 (1995) (the "Fossum Camera on a
9    Chip Article") [Exhibit L hereto];

10    L.    Kemeny, B. Pain, E. Fossum, L. Matthies, and R. Panicacci,
11    *Multiresolution Image Sensor Using Switched Capacitor*
12    *Circuits*, Proc. 1994 International CMOS Camera Workshop,
13    Holmdel NJ, October 17-18, 1994 [Exhibit M hereto];

14    M.    Gee, Russell C., et al., *Development of CMOS Active Pixel*
15    *Image Sensors for Low Cost Commercial Applications,* Proc. of
16    NASA Technology 2004, Washington DC, November 1994
17    (Nov. 1994) (the "1994 Gee Article") co-authored by inventors
18    Fossum, Mendis, Kemeny and Nixon [Exhibit N hereto];

19    N.    Fossum, Eric R., et al., *Development of CM(X [sic] Active Pixel*
20    *Image Sensors for Low Cost Commercial Applications* (June
21    1994) (the "1994 Fossum Development Article") [Exhibit O
22    hereto];

23    O.    Mendis, Sunetra K., *CMOS Active Pixel Image Sensors with On-*
24    *Chip Analog-to-Digital Conversion*, Thesis (Ph. D.) – Columbia
25    University (1995) (the "1995 Mendis Thesis") [Exhibit P
26    hereto]; and

27    P.    Mendis, Sunetra K., Kemeny, Sabrina, E., Fossum, Eric R., *A*
28    *128 x 128 CMOS Active Pixel Image Sensor for Highly*

- 17 -

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

1      *Integrated Imaging Systems*, IEDM 93, pp. 583-86 (1993) (the

2      "1993 Mendis Article") [Exhibit Q hereto].

3      88.    Applicants were aware of a number of material prior art references

4      prior to and during the pendency of prosecution of the Patents-In-Suit and the

5      Parent Patents as evidenced by their citation to those references in articles authored

6      by the inventors, such as the articles listed above.  Examples of material prior art

7      references include, but are not limited to:

8              A.      Yadid-Pecht, O., et al., *A Random Access Photodiode Array for*

9                      *Intelligent Image Capture*, IEEE Trans. on Electron Devices,

10                     vol. 38, no. 8, pp. 1772-1780 (Aug. 1991) (the "1991 Yadid-

11                     Pecht Article") [Exhibit R hereto], cited in, for example, the

12                     1994 Mendis Article and the Fossum Dinosaurs Article;

13             B.      Hynecek, J., *BCMD – An Improved Photosite Structure for High*

14                     *Density Sensors*, IEEE Transactions on Electron Devices, vol.,

15                     38(5), pp. 1011-1020 (May 1991) (the "1991 Hynecek Article")

16                     [Exhibit S hereto], cited in, for example, the 1994 Mendis

17                     Article and the Fossum Dinosaurs Article;

18             C.      Kyomasu, M., *A New MOS Imager Using Photodiode as*

19                     *Current Source, IEEE Journal of Solid-State Circuits*, vol. 26,

20                     no. 8, pp. 1116-1122 (1991) (the "1991 Kyomasu Article")

21                     [Exhibit T hereto], cited in, for example, the Fossum Camera on

22                     a Chip Article;

23             D.      Andoh, F., et al., *A 250,000-Pixel Image Sensor with FET*

24                     *Amplification at Each Pixel for High-Speed Television Cameras*,

25                     1990 IEEE International Solid-State Circuits Conference (1990)

26                     (the "1990 Andoh Article") [Exhibit U hereto], cited in, for

27                     example, the Fossum Camera on a Chip Article;

28             E.      Chen, K., et al, *PASIC: A Processor – A/D converter-Sensor*

- 18 -

1                 *Integrated Circuit*, IEEE, pp. 1705-1708 (1990) ("the 1990

2                 Chen Article") [Exhibit V hereto], cited in, for example, the

3                 Fossum Camera on a Chip Article;

4       F.     D. Renshaw, et al. *ASIC Vision*, 1990 IEEE CICC Proc., pp

5                 7.3.1-7.3.4 (1990) ("ASIC Vision") [Exhibit W hereto], cited in,

6                 for example, the 1994 Eid Article; and

7       G.     Forchheimer, R., et al., *MAPP2200 – A Second generation*

8                 *smart optical sensor*, Proc. SPIE, vol. 1659, pp. 2-11 (1992) (the

9                 "1992 Forchheimer Article") [Exhibit X hereto], cited in, for

10                 example, the Fossum Camera on a Chip Article.

11      89.     On information and belief, the Patents-In-Suit and the Parent Patents

12 were procured by inequitable conduct, rendering them unenforceable in their

13 entirety. In the applications leading to the Patents-In-Suit and the Parent Patents,

14 Applicants failed to disclose to the USPTO material references relevant to the

15 prosecution with intent to deceive. Based on the fact that these references are

16 Applicants' own publications describing the technology at issue in the Patents-In-

17 Suit and the Parent Patents or third-party prior art references cited in such

18 publications as being relevant to Applicants' technology, Applicants were aware of

19 these prior art references and intentionally failed to provide these references with

20 the intent to deceive the USPTO. The references identified as omitted by

21 Applicants herein are illustrative. Canon U.S.A. and Canon Inc. reserve the right to

22 amend their answer to state additional misrepresentations and/or omissions as it

23 learns of them through the course of discovery in this action.

24      90.     With respect to the '515 patent and the '232 patent Applicants

25 committed inequitable conduct through their failure to cite at least the following

26 exemplary references material to the patentability of these patents: (i) the Kemeny

27 Focal-Plane Article; (ii) the 1991 Fossum Focal-Plane Image Processing Article;

28 (iii) the 1991 Fossum Future Directions Article; (iv) the 1989 Fossum Architecture

OHS West:260677618.3

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

1    Article; (v) the 1991 Yadid-Pecht Article; (vi) the 1991 Hynecek Article; (vii) the

2    1991 Kyomasu Article; (viii) the 1990 Andoh Article; (ix) the 1990 Chen Article;

3    (x) the ASIC Vision Article; (xi) the 1992 Forcheimer Article; and (xii) the Fossum

4    Dinosaurs Article.

5        91.   With respect to the '126 patent, the '503 patent, the '059 patent and the

6    '838 patent Applicants committed inequitable conduct through their failure to cite

7    at least each of the exemplary prior art references disclosed in Paragraphs 87 and 88

8    above which are material to the patentability of these patents.

9        92.   With respect to the '122 patent application Applicants committed

10   inequitable conduct through their failure to cite at least each of the exemplary prior

11   art references disclosed in Paragraphs 87 and 88 above (with the exception of the

12   Fossum Camera on a Chip Article, which was cited), which are material to the

13   patentability of this patent.

14       93.   With respect to the applications for the '506 patent and the '483 patent,

15   Applicants committed inequitable conduct through their failure to cite at least each

16   of the exemplary prior art references disclosed in Paragraphs 87 and 88 above (with

17   the exception of the 1994 Mendis Article, which was cited), which are material to

18   the patentability of these patents.

19       94.   With respect to the applications leading to the '842 patent, the '068

20   patent, the '166 patent, the '617 patent, the '326 patent, and the '235 patent,

21   Applicants committed inequitable conduct through their failure to cite at least the

22   following exemplary references material to the patentability of these patents: (i) the

23   Kemeny Focal-Plane Article; (ii) the 1991 Fossum Focal-Plane Image Processing

24   Article; (iii) the 1991 Fossum Future Directions Article; (iv) the 1994 Eid Article;

25   and (v) the Fossum Ultra Low Power Article.

26       95.   With respect to the '842 patent, the '068 patent, the '166 patent, the

27   '617 patent, the '326 patent, and the '235 patent, Applicants committed inequitable

28   conduct by burying certain references. For example, even though the 1991 Yadid-

1    Pecht Article, the 1991 Kyomasu Article, the 1990 Chen Article, and the 1990

2    Andoh Article were material, the Applicants of the '842 patent and the '068 patent

3    failed to properly disclose these references to the USPTO.  On information and

4    belief, the Applicants buried the references among more than 100 other references

5    with an intent to deceive and/or mislead the USPTO in order to obtain issuance of

6    the '842 patent and the '068 patent.  Also, even though the 1991 Yadid-Pecht

7    Article, the 1991 Kyomasu Article, the 1990 Chen Article, the 1990 Andoh Article,

8    the 1993 Mendis Article, and the 1994 Mendis Article were material, based on

9    information and belief, the Applicants of the '166 patent, the '617 patent, the '326

10   patent, and the '235 patent intentionally failed to properly disclose these references

11   to the USPTO and instead buried these references among many other references

12   which were not as material or relevant.  On information and belief, this was done

13   with intent to deceive the USPTO in order to obtain issuance of the '166 patent, the

14   '617 patent, the '326 patent, and the '235 patent

15        96.    In addition to the prior art references related to the Applicants'

16   publications discussed above, the '842 patent is also unenforceable due to

17   inequitable conduct arising from Applicants' failure to properly cite prior art

18   references that were cited by the USPTO during prosecution of the '232 patent (the

19   immediate parent of the '842 patent).

20        97.    The Examiner of the '232 patent application rejected claims in an

21   Office Action dated July 2, 1997, specifically using the following references: (i)

22   U.S. Patent No. 4,407,010 to Baji et al.; (ii) U.S. Patent No. 5,563,429 to Isogai;

23   (iii) U.S. Patent No. 4,093,782 to Hartman et al.; (iv) U.S. Patent No. 4,155,094 to

24   Ohba et al.; (v) U.S. Patent No. 3,623,132 to Green; (vi) U.S. Patent No. 4,287,441

25   to Smith; (vii) U.S. Patent No. 4,683,580 to Matsunaga; (viii) U.S. Patent No.

26   5,323,052 to Koyama; and (ix) JP Pub. No. 5235317 (collectively, "the '232 patent

27   references").

28        98.    On June 27, 2000, the '842 patent application was filed with

- 21 -

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

1   substantially identical claims as were previously rejected in the '232 patent

2   application. A list of references was filed concurrently with the '842 patent

3   application, listing the '232 patent references. Thereafter, however, in an Office

4   Action the Examiner notified the Applicants that "[t]he list of references in the

5   specification filed on June 27/2000 [sic] is not a proper information disclosure

6   statement.... Therefore, unless the references have been cited by the examiner on

7   form PTO-892, they are not been [sic] considered." The '232 patent references

8   were never resubmitted in a proper manner, and the Examiner never considered

9   them, as indicated by the fact that the Examiner struck-through the '232 patent

10  references on the list provided with the '842 patent application.

11      99.    On information and belief, the Applicants therefore intentionally

12  withheld material references from the Examiner during the '842 patent prosecution.

13  Despite having received express notice of their failure to properly submit the '232

14  patent references the Applicants still intentionally failed to remedy this material

15  omission.

16      **B.   Omnivision Litigation.**

17      100.   The '068 patent, the '842 patent, the '235 patent, the '617 patent, the

18  '166 patent, the '326 patent, the '059 patent, the '838 patent, and the '122 patent are

19  unenforceable due to inequitable conduct based on the failure of the Applicants to

20  cite to the USPTO the existence of litigations involving the '126 patent and

21  material information arising therefrom.

22      101.   The Manual of Patent Examining Procedure ("MPEP"), in Section

23  2001.06(c), states that: "Where the subject matter for which a patent is sought is or

24  has been involved in litigation, the existence of such litigation and any other

25  material information arising therefrom must be brought to the attention of the

26  Patent and Trademark Office."

27      102.   Section 2001.06(c) of the MPEP was in effect during the litigations

28  involving the '126 patent and during the prosecution of the '068 patent, the '842

- 22 -

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

1  patent, the '235 patent, the '617 patent, the '166 patent, the '326 patent, the '059

2  patent, the '838 patent, and the '122 patent.

3      103.   On October 13, 2000, Omnivision Technologies Inc. ("Omnivision")

4  filed suit in the United States District Court for the Northern District of California

5  against Photobit Corporation and Caltech seeking a declaratory judgment of non-

6  infringement and invalidity of the '126 patent and other patents (the "Omnivision

7  District Court Litigation").  The Omnivision District Court Litigation advanced

8  through *Markman* briefing in which Caltech and the other parties briefed their

9  respective positions on disputed claim terms in the '126 patent and other patents.

10 For the '126  patent, Caltech briefed its position on the following claim terms that

11 are, in whole or in part, claim terms in the '068 patent, the '842 patent, the '235

12 patent, the '617 patent, the '166 patent, the '326 patent, the '059 patent, the '838

13 patent, and the '122 patent: (i) "A camera on a chip;" (ii) "pixel;" (iii) "light

14 collecting elements which each receive light and store an electronic information in

15 an amount indicative of an amount of light received during an integration period;"

16 (iv) "timing element;" (v) "readout control element;" (vi) "compatible with

17 CMOS;" (vii) "An imaging system on a single substrate;" and (viii) "a latch

18 element storing values to be used in said timing element."  On September 24, 2001,

19 the court dismissed the case with prejudice.  A true and correct copy of the Joint

20 Claim Construction and Prehearing Statement from the Omnivision District Court

21 Litigation, filed on July 10, 2001, is attached hereto as Exhibit Y.  A true and

22 correct copy of Photobit Corporation and California Institute of Technology's

23 Opening Markman Claim Construction Brief from the Omnivision District Court

24 Litigation, filed on August 23, 2001, is attached hereto as Exhibit Z.

25     104.   On or about February 2001, Photobit Corporation and Caltech filed a

26 Section 337 action before the U.S. International Trade Commission ("ITC")

27 seeking an exclusionary order pertaining to products alleged to infringe the '126

28 patent, the '506 patent and a third patent (the "Caltech ITC Action").  Proposed

- 23 -

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

1  respondents included Omnivision, among others.  The ITC instituted its

2  investigation on or about March 12, 2001 and terminated the proceeding on or

3  about October 30, 2001, as a result of settlement by the parties.  In the Caltech ITC

4  Action, Omnivision alleged inequitable conduct of the '506 Patent.

5        105.  During the pendency of the Omnivision District Court Litigation and

6  the Caltech ITC Action, patent applications that issued as the '842 patent, the '235

7  patent, the '326 patent, the '617 patent, the '838 patent, and the '122 patent were

8  pending before the USPTO.  Patent applications that issued as the '068 patent, the

9  '166 patent, and the '059 patent were filed subsequent to the dismissal of the

10  Omnivision District Court Litigation and termination of the Caltech ITC Action.

11        106.  The named inventor(s), the prosecuting attorney(s), and/or other

12  individual(s) associated with the filing and/or prosecution of applications for the

13  '068 patent, the '842 patent, the '235 patent, the '617 patent, the '166 patent, the

14  '326 patent, the '059 patent, the '838 patent, and the '122 patent were aware of the

15  Omnivision District Court Litigation and the Caltech ITC Action during the

16  prosecution of the applications that issued as the '842 patent, the '235 patent, the

17  '326 patent, the '617 patent, the '838 patent, the '122 patent, the '068 patent, the

18  '166 patent, and the '059 patent.

19        107.  At least the existence of the Omnivision District Court Litigation and

20  the Caltech ITC Action and Caltech's positions on claim construction of claim

21  terms and invalidity positions would have been material to the examination of the

22  '068 patent, the '842 patent, the '235 patent, the '617 patent, the '166 patent, the

23  '326 patent, the '059 patent, the '838 patent, and the '122 patent in accordance with

24  37 C.F.R. § 1.56.  Notwithstanding, the named inventor(s), the prosecuting

25  attorney(s), and/or other individual(s) associated with the filing and/or prosecution

26  of applications for the '842 patent, the '235 Patent, the '326 patent, the '617 patent,

27  the '838 patent, the '122 patent, the '068 patent, the '166 patent, and the '059 patent

28  failed to cite the existence of the Omnivision District Court Litigation and the

- 24 -

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

1    Caltech ITC Action, and material information arising therefrom, in the applications

2    that issued as the '068 patent, the '842 patent, the '235 patent, the '617 patent, the

3    '166 patent, the '326 patent, the '059 patent, the '838 patent, and the '122 patent.

4    On information and belief, the failure to cite such information was with the intent to

5    deceive the USPTO.

6    ### III.    INFECTIOUS UNENFORCEABILITY.

7        108.    On information and belief, the Patents-In-Suit are unenforceable due to

8    inequitable conduct based on the doctrine of infectious unenforceability because the

9    Applicants breached their duty of candor and good faith in dealing with the USPTO

10    by intentionally failing to properly disclose to the USPTO material information

11    and/or documents and/or fraudulently asserting statements to the USPTO with an

12    intent to deceive the USPTO in parent applications to those patents.

13        109.    The '842 patent and the '068 patent are continuations of the '515

14    patent and the '232 patent.  The Applicants' inequitable conduct with respect to the

15    '515 patent and '232 patent, discussed above, renders the '842 patent and '068

16    patent unenforceable based upon infectious unenforceability because the '842

17    patent and the '068 patent bear an immediate and necessary relation to the

18    inequitable conduct.  The '842 patent and '068 patent did not face their own

19    substantive rejections over prior art and instead were only rejected based upon the

20    judicially created doctrine of nonstatutory double patenting because they were

21    deemed not patentably distinct from the claims of the '232 patent and the '842

22    patent, respectively.

23        110.    The '235 patent is a continuation of the '126 patent, which itself is a

24    continuation of the '232 patent, which is a continuation-in-part of the '515 patent.

25    The '166 patent, the '617 patent and the '326 patent are divisionals of the '126

26    patent.  The Applicants' inequitable conduct with respect to the '126 patent, the

27    '515 patent, and the '232 patent, discussed above, renders the '235 patent, the '166

28    patent, the '617 patent, and the '326 patent unenforceable based upon infectious

- 25 -

1    unenforceability because the '235 patent, the '166 patent, the '617 patent, and the

2    '326 patent bear an immediate and necessary relation to the inequitable conduct.  In

3    particular, arguments for the patentability of the '126 patent, the '515 patent and the

4    '232 patent and the failure to properly cite prior art in the prosecution of those

5    patents directly affected the prosecution of the '235 patent, the '166 patent, the '617

6    patent and the '326 patent, which claim similar image sensor structures.  Moreover,

7    Applicants' misrepresentations as to the priority claim of the '126 patent directly

8    affected the prosecution of the '235 patent, the '166 patent, the '617 patent and the

9    '326 patent, which claim direct priority thereto.

10           111.   The '838 patent is a continuation of the '768 patent, which itself is a

11    continuation-in-part of the '232 patent, which is a continuation of the '515 patent.

12    The '059 patent is a divisional of the '503 patent, which itself is a continuation-in-

13    part of the '232 patent, which is a continuation of the '515 patent.  The '483 patent

14    is a continuation-in-part of the '232 patent, which itself is a continuation of the '515

15    patent.  Applicants' inequitable conduct with respect to the '515 patent, the '232

16    patent, the '768 patent and the '503 patent, discussed above, renders the '838

17    patent, the '059 patent, and the '483 patent unenforceable based upon infectious

18    unenforceability because the '838 patent, the '059 patent, and the '483 patent bear

19    an immediate and necessary relation to the inequitable conduct.

20    **CANON U.S.A.'S AND CANON INC.'S FIFTH AFFIRMATIVE DEFENSE**

21                              **(Improper Marking or Notice)**

22           112.   On information and belief, Caltech is barred in whole or in part from

23    recovering any alleged damages that occurred prior to the filing of the Complaint in

24    this action because Caltech failed to comply with the requirements of 35 U.S.C. §

25    287.

26    **CANON U.S.A.'S AND CANON INC.'S SIXTH AFFIRMATIVE DEFENSE**

27                                        **(Estoppel)**

28           113.   On information and belief, Caltech is barred in whole or in part from

- 26 -

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

1   recovering any alleged damages by the application of the doctrine of equitable

2   estoppel, including but not limited to the doctrine of prosecution history estoppel.

3   **CANON U.S.A.'S AND CANON INC.'S SEVENTH AFFIRMATIVE**

4   **DEFENSE**

5   **(Patent Misuse and Unclean Hands)**

6   114.   On information and belief, Caltech is barred in whole or in part from

7   recovering any alleged applications by the application of the doctrines of patent

8   misuse and/or unclean hands.

9   115.   Canon U.S.A. and Canon Inc. reserve the right to amend their Answer

10   to assert further affirmative defenses based on future discovery in this suit.

11   **PLAINTIFF'S PRAYER FOR RELIEF**

12   116.   Wherefore Canon U.S.A. and Canon Inc. deny each and every

13   allegation contained in the Prayer for Relief in Plaintiff's First Amended

14   Complaint, and specifically deny that Caltech is entitled to any judgment against

15   Canon U.S.A. or Canon Inc., to any of the relief described therein, or to any remedy

16   whatsoever against Canon U.S.A. and Canon Inc.

17   **CANON U.S.A.'S COUNTERCLAIMS**

18   **Parties**

19   117.   Canon U.S.A., Inc. ("Canon U.S.A.") is a corporation organized under

20   the laws of New York, having its principal place of business at One Canon Plaza,

21   Lake Success, New York 11042-1113.

22   118.   Upon information and belief, California Institute of Technology

23   ("Caltech") is a private university having its principal place of business in

24   Pasadena, California, as alleged in Plaintiff's First Amended Complaint.  Upon

25   further information and belief, Caltech is active in the business of commercializing

26   technology development through the licensing of intellectual property to people

27   located both within California and nationally.

28   119.   This Court has subject matter jurisdiction over Canon U.S.A.'s

- 27 -

OHS West:260677618.3

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

1  counterclaims for declaratory judgments of non-infringement, invalidity and
2  unenforceability pursuant to 28 U.S.C. §§ 1331, 1338 and 2201.

3       120.   This Court has personal jurisdiction over these counterclaims both
4  because Caltech has conducted and does conduct business within the State of
5  California, and because of the already-pending action initiated by Caltech.

6       121.   Venue for these counterclaims is proper in this judicial district
7  pursuant to 28 U.S.C. §§ 1391 and 1400(b).

8       **First Counterclaim – Declaratory Judgment of Non-Infringement**

9       122.   Canon U.S.A. restates and incorporates the allegations set forth above
10  as if fully set forth herein.

11      123.   Canon U.S.A. is not, as Caltech alleges in Plaintiff's First Amended
12  Complaint, infringing and has not infringed (directly, by inducement,
13  contributorily, or in any other way) any valid and enforceable assert claim of U.S.
14  Patent No. 5,990,506.

15      124.   Canon U.S.A. is not, as Caltech alleges in Plaintiff's First Amended
16  Complaint, infringing and has not infringed (directly, by inducement,
17  contributorily, or in any other way) any valid and enforceable assert claim of U.S.
18  Patent No. 6,456,326.

19      125.   Canon U.S.A. is not, as Caltech alleges in Plaintiff's First Amended
20  Complaint, infringing and has not infringed (directly, by inducement,
21  contributorily, or in any other way) any valid and enforceable assert claim of U.S.
22  Patent No. 6,549,235.

23      126.   Canon U.S.A. is not, as Caltech alleges in Plaintiff's First Amended
24  Complaint, infringing and has not infringed (directly, by inducement,
25  contributorily, or in any other way) any valid and enforceable assert claim of U.S.
26  Patent No. 6,555,842.

27      127.   Canon U.S.A. is not, as Caltech alleges in Plaintiff's First Amended
28  Complaint, infringing and has not infringed (directly, by inducement,

- 28 -

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

1  contributorily, or in any other way) any valid and enforceable assert claim of U.S.
2  Patent No. 6,570,617.
3        128.   Canon U.S.A. is not, as Caltech alleges in Plaintiff's First Amended
4  Complaint, infringing and has not infringed (directly, by inducement,
5  contributorily, or in any other way) any valid and enforceable assert claim of U.S.
6  Patent No. 6,744,068.
7        129.   Canon U.S.A. is not, as Caltech alleges in Plaintiff's First Amended
8  Complaint, infringing and has not infringed (directly, by inducement,
9  contributorily, or in any other way) any valid and enforceable assert claim of U.S.
10  Patent No. 5,949,483.
11        130.   Canon U.S.A. is not, as Caltech alleges in Plaintiff's First Amended
12  Complaint, infringing and has not infringed (directly, by inducement,
13  contributorily, or in any other way) any valid and enforceable assert claim of U.S.
14  Patent No. 6,606,122.
15        131.   Canon U.S.A. is not, as Caltech alleges in Plaintiff's First Amended
16  Complaint, infringing and has not infringed (directly, by inducement,
17  contributorily, or in any other way) any valid and enforceable assert claim of U.S.
18  Patent No. 6,943,838.
19        132.   Canon U.S.A. is not, as Caltech alleges in Plaintiff's First Amended
20  Complaint, infringing and has not infringed (directly, by inducement,
21  contributorily, or in any other way) any valid and enforceable assert claim of U.S.
22  Patent No. 6,825,059.
23        133.   Canon U.S.A. is not, as Caltech alleges in Plaintiff's First Amended
24  Complaint, infringing and has not infringed (directly, by inducement,
25  contributorily, or in any other way) any valid and enforceable assert claim of U.S.
26  Patent No. 7,369,166.
27        134.   Caltech, by way of Plaintiff's First Amended Complaint, has raised
28  legal and factual questions as to Canon U.S.A.'s alleged infringement of these

- 29 -

OHS West:260677618.3

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

1    certain patents. To resolve these questions and to afford Canon U.S.A. relief from

2    the uncertainty and controversy raised by Caltech's allegations and Plaintiff's First

3    Amended Complaint, Canon U.S.A. is entitled to a declaratory judgment that it

4    does not infringe any valid and asserted claim of any of the patents alleged by

5    Caltech, including the '506 patent, the '326 patent, the '235 patent, the '842 patent,

6    the '617 patent, the '068 patent, the '483 patent, the '122 patent, the '838 patent,

7    the '059 patent and the '166 patent (collectively the "Patents-In-Suit").

8    **Second Counterclaim – Declaratory Judgment of Invalidity**

9    135. Canon U.S.A. restates and incorporates the allegations set forth above

10    as if fully set forth herein.

11    136. Each claim of U.S. Patent No. 5,990,506 is invalid for failing to

12    comply with one or more of the conditions and requirements of the patent laws of

13    the United States, including but not limited to 35 U.S.C. §§ 101, 102, 103 and 112,

14    and the rules, regulations and laws pertaining to these provisions.

15    137. Each claim of U.S. Patent No. 6,456,326 is invalid for failing to

16    comply with one or more of the conditions and requirements of the patent laws of

17    the United States, including but not limited to 35 U.S.C. §§ 101, 102, 103 and 112,

18    and the rules, regulations and laws pertaining to these provisions.

19    138. Each claim of U.S. Patent No. 6,549,235 is invalid for failing to

20    comply with one or more of the conditions and requirements of the patent laws of

21    the United States, including but not limited to 35 U.S.C. §§ 101, 102, 103 and 112,

22    and the rules, regulations and laws pertaining to these provisions.

23    139. Each claim of U.S. Patent No. 6,555,842 is invalid for failing to

24    comply with one or more of the conditions and requirements of the patent laws of

25    the United States, including but not limited to 35 U.S.C. §§ 101, 102, 103 and 112,

26    and the rules, regulations and laws pertaining to these provisions.

27    140. Each claim of U.S. Patent No. 6,570,617 is invalid for failing to

28    comply with one or more of the conditions and requirements of the patent laws of

OHS West:260677618.3

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

1  the United States, including but not limited to 35 U.S.C. §§ 101, 102, 103 and 112,

2  and the rules, regulations and laws pertaining to these provisions.

3      141.   Each claim of U.S. Patent No. 6,744,068 is invalid for failing to

4  comply with one or more of the conditions and requirements of the patent laws of

5  the United States, including but not limited to 35 U.S.C. §§ 101, 102, 103 and 112,

6  and the rules, regulations and laws pertaining to these provisions.

7      142.   Each claim of U.S. Patent No. 5,949,483 is invalid for failing to

8  comply with one or more of the conditions and requirements of the patent laws of

9  the United States, including but not limited to 35 U.S.C. §§ 101, 102, 103 and 112,

10  and the rules, regulations and laws pertaining to these provisions.

11      143.   Each claim of U.S. Patent No. 6,606,122 is invalid for failing to

12  comply with one or more of the conditions and requirements of the patent laws of

13  the United States, including but not limited to 35 U.S.C. §§ 101, 102, 103 and 112,

14  and the rules, regulations and laws pertaining to these provisions.

15      144.   Each claim of U.S. Patent No. 6,943,838 is invalid for failing to

16  comply with one or more of the conditions and requirements of the patent laws of

17  the United States, including but not limited to 35 U.S.C. §§ 101, 102, 103 and 112,

18  and the rules, regulations and laws pertaining to these provisions.

19      145.   Each claim of U.S. Patent No. 6,825,059 is invalid for failing to

20  comply with one or more of the conditions and requirements of the patent laws of

21  the United States, including but not limited to 35 U.S.C. §§ 101, 102, 103 and 112,

22  and the rules, regulations and laws pertaining to these provisions.

23      146.   Each claim of U.S. Patent No. 7,369,166 is invalid for failing to

24  comply with one or more of the conditions and requirements of the patent laws of

25  the United States, including but not limited to 35 U.S.C. §§ 101, 102, 103 and 112,

26  and the rules, regulations and laws pertaining to these provisions.

27      147.   Caltech, by way of Plaintiff's First Amended Complaint, has raised

28  legal and factual questions as to Canon U.S.A.'s alleged infringement of these

OHS West:260677618.3

1    certain patents.  To resolve these questions and to afford Canon U.S.A. relief from

2    the uncertainty and controversy raised by Caltech's allegations and Plaintiff's First

3    Amended Complaint, Canon U.S.A. is entitled to a declaratory judgment that the

4    '506 patent, the '326 patent, the '235 patent, the '842 patent, the '617 patent, the

5    '068 patent, the '483 patent, the '122 patent, the '838 patent, the '059 patent and the

6    '166 patent are invalid for failure to comply with one or more of the conditions and

7    requirements of the patent laws of the United States, including but not limited to 35

8    U.S.C. §§ 101, 102, 103 and 112, and the rules, regulations and laws pertaining to

9    these provisions.

10    **Third Counterclaim – Declaratory Judgment of Unenforceability**

11        148.   Canon U.S.A. restates and incorporates the allegations set forth above

12    as if fully set forth herein.

13        149.   All of the Patents-In-Suit are void and unenforceable because the

14    named inventor(s), the prosecuting attorney(s), and/or other individual(s) having a

15    duty of candor and good faith dealing with the United States Patent and Trademark

16    Office (the "USPTO") (collectively "Applicants") breached their duty in the

17    prosecution of the applications that led to the issuance of the Patents-In-Suit by

18    failing to properly disclose to the USPTO material information and by making false

19    and misleading statements, with intent to deceive the USPTO, either: (1) directly in

20    prosecuting the Patents-In-Suit; or (2) indirectly in prosecuting patents related to

21    the Patents-In-Suit (the "Parent Patents"), through the doctrine of infectious

22    unenforceability.

23        150.   The prosecuting attorney(s) and/or other individual(s) associated with

24    the filing and/or prosecution of the Parent Patents and the Patents-In-Suit include,

25    at least, the named inventors of the Patents-In-Suit, patent attorneys Robert M.

26    Wallace and Scott C. Harris, and, based on information and belief, at least one or

27    more employees of Caltech who were responsible for overseeing the filing and/or

28    prosecution of the Parent Patents and the Patents-In-Suit.

- 32 -

OHS West:260677618.3

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

1       151.   Under 37 C.F.R. § 1.56, each individual associated with the filing

2   and/or prosecution of a patent application has, during the pendency of that

3   application, a duty of candor and good faith in dealing with the USPTO, which

4   includes a duty to disclose to the USPTO all information known to those

5   individuals to be material to the patentability of the pending claims.

6       152.   All the named inventors of the Parent Patents and the Patents-In-Suit

7   expressly acknowledged their duty of disclosure as defined by 37 C.F.R. § 1.56 to

8   disclose all information known to them which would be material to the patentability

9   in declarations filed with the USPTO.

10       153.   Under 37 C.F.R. § 10.18(b), which was in effect during the pendency

11   of each of the Patents-In-Suit and the Parent Patents, patent attorneys and patent

12   agents involved in the filing and/or prosecution of a patent application were under a

13   duty to make a reasonable inquiry as to truth and propriety before submitting a

14   paper to the USPTO.

15       154.   Actions and omissions by Applicants in the prosecution of U.S. Patent

16   No. 5,471,515 ("the '515 patent"), U.S. Patent No. 6,101,232 ("the '232 patent"),

17   and U.S. Patent No. 5,841,126 ("the '126 patent"); U.S. Patent No. 6,166,768 ("the

18   '768 patent") and U.S. Patent No. 6,486,503 ("the '503 patent") render the Patents-

19   In-Suit unenforceable under the doctrine of infectious unenforceability.

20   **I.**       **AFFIRMATIVE MISREPRESENTATIONS TO THE USPTO.**

21       **A.**    **Kemeny Declaration (The '515 and '232 Patents).**

22       155.   On September 29, 1994, Sabrina Kemeny, a named co-inventor of the

23   '515 patent, executed a declaration in support of the '515 patent application and in

24   response to the USPTO's rejection of the pending application claim. [Exhibit A

25   hereto (the "Kemeny Decl.")]

26       156.   After describing her academic achievements and experience in the

27   field of the art, Kemeny averred in her declaration that "[a]ll CCD imagers have

28   been limited by the necessity of sharing a common read-out circuit among plural

OHS West:260677618.3

1    pixels." [Exhibit A hereto, at 1]. Kemeny also averred:

2            the present invention … provides the first CCD imaging
3            circuit having one read-out circuit for each pixel or
        photogate. Nothing in the art would suggest one read-out
4            circuit per photogate…. This combination of features
        makes possible for the first time the one-pixel-per-readout
5            circuit structure of the invention and was first disclosed in
        the applicant's specification.

6    [Exhibit A hereto, at 2].

7            157.    Articles authored by Kemeny and/or other '515 patent named co-

8    inventors Eric R. Fossum and Sunetra K. Mendis show that prior to the Kemeny

9    Decl., Kemeny and the other named co-inventors of the '515 patent were aware of

10    prior art publications teaching one read-out circuit for each pixel. Examples of

11    these articles include, but are not limited to:

12            A.    Mendis, Sunetra K., Kemeny, Sabrina E., Gee, Russell C., Pain
13                    Bedabrata, Kim Quiesup, and Fossum, Eric. R., *Progress in*
14                    *CMOS Active Pixel Image Sensors*, SPIE (1994) (the "1994
15                    Mendis Article") [Exhibit B hereto];

16            B.    Fossum, Eric R., *Active Pixel Sensors: Are CCDs Dinosaurs?*,
17                    Proc. SPIE, col. 1900, pp. 2-14, 1993 (the "Fossum Dinosaurs
18                    Article") [Exhibit C hereto];

19            C.    Kemeny, Sabrina E., Eid, El-Sayed, Mendis, Sunetra, and
20                    Fossum, Eric R., *Update on focal-plane image processing*
21                    *research*, SPIE Vol. 1447 Charge-Coupled Devices and Solid
22                    State Optical Sensors II (1991) (the "Kemeny Focal-Plane
23                    Article") [Exhibit D hereto];

24            D.    Fossum, Eric R., *Architectures for Focal-plane Image*
25                    *Processing*, Opt. Eng., vol. 28(8), 865-871 (1989) (the "1989
26                    Fossum Architecture Article) [Exhibit E hereto].

27            158.    The 1994 Mendis Article, which also lists Kemeny and Fossum as

28    authors, defines an active pixel sensor as "an image sensor technology that has one

- 34 -

1    or more active transistors within the pixel unit cell". The 1994 Mendis Article

2    further cites to at least five references in its "Introduction" that disclose such a

3    structure and that qualify as prior art to the '515 patent application and the Patents-

4    In-Suit.

5        159. The Fossum Dinosaurs Article, authored by Fossum, similarly

6    identifies numerous prior art references in its "State-Of-The-Art" section disclosing

7    active pixel sensors having one readout circuit per pixel.

8        160. The Kemeny Focal-Plane Article, which also lists Mendis and Fossum

9    as authors, describes research into incorporating image processing into CCD image

10   sensors, referred to as "Focal-plane image processing." The Kemeny Focal-Plane

11   Article provides experimental results obtained with imaging devices made by the

12   group and cites to the 1989 Fossum Architecture Article.

13       161. The 1989 Fossum Architecture Article describes the use of a

14   CCD/CMOS process, the combination of a photoreceptor and processing element in

15   a combined pixel unit cell and that the processing element can include

16   buffer/amplifier functions for the pixel unit cell or more sophisticated functions.

17       162. On information and belief, in view of the foregoing publications by the

18   named inventor of the '515 patent, Kemeny knew of the foregoing teachings in the

19   prior art. The Kemeny Decl., therefore, knowingly contained material false and

20   misleading statements submitted with an intent to deceive the USPTO.

21       163. Through an October 11, 1994 Amendment, Applicants submitted and

22   relied on the Kemeny Decl. to argue for the patentability of the then pending '515

23   patent application claims.

24       164. On information and belief, the Applicants committed inequitable

25   conduct by submitting and relying on the false and misleading Kemeny Decl. in the

26   October 11, 1994 Amendment, with an intent to deceive the USPTO in order to

27   obtain the issuance of the '515 patent. The false statements were material to the

28   examination of the application that issued as the '515 patent.

- 35 -

OHS West:260677618.3

165.   Through a November 16, 1995 Amendment, Applicants relied on the Kemeny Decl. to argue for the patentability of the then pending '232 patent application claims.

166.   On information and belief, the Applicants committed inequitable conduct by submitting and relying on the false and misleading Kemeny Decl., in the November 16, 1995 Amendment, with an intent to deceive the USPTO in order to obtain the issuance of the '232 patent. The false statements were material to the examination of the application that issued as the '232 patent.

**B.    Misleading Claim to Priority (the '126 and '483 Patents).**

167.   The '126 patent is a continuation-in-part of the '232 patent and claims priority to the '232 patent and a provisional patent application, 60/010,678 filed on January 26, 1996.

168.   In an October 28, 1997 Office Action, the claims of the '126 patent application were rejected pursuant to 35 U.S.C. 102(e) over U.S. Patent No. 5,461,425, which was filed on October 24, 1994.

169.   In response, in an amendment dated January 28, 1998, the Applicants argued that claim 1 of the '126 patent was entitled to the benefit of the filing date of '515 patent. Specifically, it was stated that:

> Claim 1 is entitled to the priority date of the parent (January 28, 1994) because the parent includes a substrate having an array of pixels and a control area. The pixels are disclosed to be light collecting elements which each receive light and store electronic information in an amount indicative of an amount of light received during an integration period (see, e.g., column 3, lines 22-24 of the above '515 patent). The control area includes a readout circuit (element 70 of the '515 patent). The circuitry in the control area is CMOS (column 4, lines 59-61), and the pixel area is compatible with CMOS (column 4, lines 40-42). The timing element is that which controls, e.g., the integration period.

[January 28, 1998 Amendment at 2-3].

170.   Contrary to the Applicants assertions, the '515 patent does not disclose (1) a timing element; (2) a control area outside of the pixel area, or (3) that the

- 36 -

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

1    readout circuitry is a "control area".

2        171.    With regard to the '483 patent, in response to a rejection by the

3    USPTO, in an Amendment on October 7, 1998 the Applicants intentionally made

4    false statements and misleadingly argued that Mandl (prior art cited in an

5    obviousness rejection of the then pending claims 1-4, 6-7, 12-13, 16-17, and 21)

6    "did not constitute prior art ... [because it] was filed later than the priority date of

7    the claim limitation on the active pixel sensor cited in Claims 1-4, 6-7, 12-13, 16-

8    17, and 21, which is January 28, 1994, based on the parent application No.

9    08/188,032, now U.S. Patent No. 5,471,515." ('483 Patent File History, October 7,

10   1998 Amendment (emphasis in original)).

11       172.    However, then pending claims 1-4, 6-7, 12-13, 16-17, and 21 lacked

12   support in the '515 patent and, as a result, were not entitled to the filing date of the

13   '515 patent as a priority date.  Therefore, contrary to the argument in the

14   Amendment, Mandl could not be predated and instead stood as material prior art to

15   the claims of the '483 patent application.

16       173.    On information and belief, the Applicants committed inequitable

17   conduct by making these statements with intent to deceive the USPTO as to the

18   correct priority date for the claims of the '126 patent and '483 patent and, thereby

19   avoid invalidating prior art.

20       **C.    Misleading Arguments for Patentability (the '506 Patent).**

21       174.    The '506 patent claims priority to provisional patent application no.

22   60/013,700, which was filed on March 20, 1996.

23       175.    On February 19, 1999, in response to a USPTO rejection, Applicants

24   admitted that the prior art references applied by the USPTO individually taught the

25   features recited in certain claims of the '506 patent application, an active pixel

26   sensor array and a color filter, but argued that there was not motivation to combine

27   these features.

28       176.    The Fossum Dinosaurs article, however, expressly discusses a prior art

- 37 -

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

1    reference that discloses an active pixel sensor with a color filter array.

2        177.    On information and belief, in view of the foregoing, Applicants

3    committed inequitable conduct in attempting to obtain allowance of the '506 patent

4    by stating to the USPTO with intent to deceive that there was no motivation to

5    combine active pixel sensors with color filter arrays.

6    II.    **FAILURE TO CITE MATERIAL INFORMATION TO THE**

7            **USPTO.**

8            A.    **Prior Art Materials.**

9        178.    Applicants authored numerous publications that are either material

10    prior art or that cite to prior art publications material to Applicants' inventions.

11    Applicants failed to cite these highly material, non-cumulative prior art references

12    in the applications of both the Patents-In-Suit, as well as in the applications of the

13    Parent Patents.

14        179.    Publications authored by the named inventors in the 1980s and 1990s

15    describe the alleged inventions disclosed and claimed by the Patents-In-Suit.  These

16    same publications also identify a number of publications authored by third-parties

17    that are material to inventions claimed in the Patents-In-Suit.  Examples of

18    publications authored by the Inventors that are material prior art to the Patent-In-

19    Suit or cite to material prior art, include, but are not limited to:

20            A.    The 1994 Mendis Article;

21            B.    The Fossum Dinosaurs Article;

22            C.    The Kemeny Focal-Plane Article;

23            D.    The 1989 Fossum Architecture Article;

24            E.    Fossum, Eric R., *On-Chip Focal-Plane Image Processing*, Proc.

25                of 1991 Symposium on Advanced Image-Acquisition

26                Technology (SAIT91),pp. 48-56, T. Ando, ed., Tokyo, Japan,

27                (November 1991) (the "1991 Fossum Focal-Plane Image

28                Processing Article") [Exhibit F hereto];

- 38 -

1        F.      Fossum, Eric R., *Future Directions In Focal-Plane Signal*

2                  *Processing For Space-Borne Scientific Imagers*, Proc. SPIE vol.

3                  1541, pp. 62-67 (1991) (the "1991 Fossum Future Directions

4                  Article") [Exhibit G hereto];

5        G.      Eid, E-S, et al., *CMOS Active Pixel Image Sensors for Low Cost*

6                  *Application*, ICECS '94, December 1994, Cairo, Egypt (the

7                  "1994 Eid Article"), co-authored by named inventor Fossum

8                  [Exhibit H hereto];

9        H.      Fossum, Eric R., *Ultra Low Power Imaging Systems Using*

10                 *CMOS Image Sensor Technology*, SPIE Vol. 2267, pp. 107 -

11                 111 (1994) (the "Fossum Ultra Low Power Article") [Exhibit I

12                 hereto];

13       I.      Fossum, Eric R., *Assessment of Image Sensor Technology for*

14                 *Future NASA Missions*, SPIE vol. 2172, pp. 1 – 16 (1994) (the

15                 "Fossum Future NASA Missions Article") [Exhibit J hereto];

16       J.      S. Mendis, B. Pain, R. Nixon, and E.R. Fossum, *Design Of A*

17                 *Low-Light-Level Image Sensor With On-Chip Sigma-Delta*

18                 *Analog-To-Digital Conversion*, CCD's and Optical Sensors III,

19                 Proc. SPIE vol. 1900, pp. 31-39 (1993) (the"Mendis 1993 A-to-

20                 D Article") [Exhibit K hereto];

21       K.     Fossum, Eric R., *CMOS Image Sensors: Electronic Camera on*

22                 *a Chip*, IEEE 1.3.1 – 1.3.9 (1995) (the "Fossum Camera on a

23                 Chip Article") [Exhibit L hereto];

24       L.     Kemeny, B. Pain, E. Fossum, L. Matthies, and R. Panicacci,

25                 *Multiresolution Image Sensor Using Switched Capacitor*

26                 *Circuits*, Proc. 1994 International CMOS Camera Workshop,

27                 Holmdel NJ, October 17-18, 1994 [Exhibit M hereto];

28       M.    Gee, Russell C., et al., *Development of CMOS Active Pixel*

OHS West:260677618.3

1  *Image Sensors for Low Cost Commercial Applications,* Proc. of

2  NASA Technology 2004, Washington DC, November 1994

3  (Nov. 1994) (the "1994 Gee Article") co-authored by inventors

4  Fossum, Mendis, Kemeny and Nixon [Exhibit N hereto];

5  N.  Fossum, Eric R., et al., *Development of CM(X [sic] Active Pixel*

6  *Image Sensors for Low Cost Commercial Applications* (June

7  1994) (the "1994 Fossum Development Article") [Exhibit O

8  hereto];

9  O.  Mendis, Sunetra K., *CMOS Active Pixel Image Sensors with On-*

10  *Chip Analog-to-Digital Conversion*, Thesis (Ph. D.) – Columbia

11  University (1995) (the "1995 Mendis Thesis") [Exhibit P

12  hereto]; and

13  P.  Mendis, Sunetra K., Kemeny, Sabrina, E., Fossum, Eric R., *A*

14  *128 x 128 CMOS Active Pixel Image Sensor for Highly*

15  *Integrated Imaging Systems*, IEDM 93, pp. 583-86 (1993) (the

16  "1993 Mendis Article") [Exhibit Q hereto].

17  180.  Applicants were aware of a number of material prior art references

18  prior to and during the pendency of prosecution of the Patents-In-Suit and the

19  Parent Patents as evidenced by their citation to those references in articles authored

20  by the inventors, such as the articles listed above.  Examples of material prior art

21  references include, but are not limited to:

22  A.  Yadid-Pecht, O., et al., *A Random Access Photodiode Array for*

23  *Intelligent Image Capture*, IEEE Trans. on Electron Devices,

24  vol. 38, no. 8, pp. 1772-1780 (Aug. 1991) (the "1991 Yadid-

25  Pecht Article") [Exhibit R hereto], cited in, for example, the

26  1994 Mendis Article and the Fossum Dinosaurs Article;

27  B.  Hynecek, J., *BCMD – An Improved Photosite Structure for High*

28  *Density Sensors*, IEEE Transactions on Electron Devices, vol.,

- 40 -

OHS West:260677618.3

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

1    38(5), pp. 1011-1020 (May 1991) (the "1991 Hynecek Article")

2    [Exhibit S hereto], cited in, for example, the 1994 Mendis

3    Article and the Fossum Dinosaurs Article;

4    C.    Kyomasu, M., *A New MOS Imager Using Photodiode as*

5    *Current Source, IEEE Journal of Solid-State Circuits*, vol. 26,

6    no. 8, pp. 1116-1122 (1991) (the "1991 Kyomasu Article")

7    [Exhibit T hereto], cited in, for example, the Fossum Camera on

8    a Chip Article;

9    D.    Andoh, F., et al., *A 250,000-Pixel Image Sensor with FET*

10    *Amplification at Each Pixel for High-Speed Television Cameras,*

11    1990 IEEE International Solid-State Circuits Conference (1990)

12    (the "1990 Andoh Article") [Exhibit U hereto], cited in, for

13    example, the Fossum Camera on a Chip Article;

14    E.    Chen, K., et al, *PASIC: A Processor – A/D converter-Sensor*

15    *Integrated Circuit*, IEEE, pp. 1705-1708 (1990) ("the 1990

16    Chen Article") [Exhibit V hereto], cited in, for example, the

17    Fossum Camera on a Chip Article;

18    F.    D. Renshaw, et al. *ASIC Vision*, 1990 IEEE CICC Proc., pp

19    7.3.1-7.3.4 (1990) ("ASIC Vision") [Exhibit W hereto], cited in,

20    for example, the 1994 Eid Article; and

21    G.    Forchheimer, R., et al., *MAPP2200 – A Second generation*

22    *smart optical sensor*, Proc. SPIE, vol. 1659, pp. 2-11 (1992) (the

23    "1992 Forchheimer Article") [Exhibit X hereto], cited in, for

24    example, the Fossum Camera on a Chip Article.

25    181.    On information and belief, the Patents-In-Suit and the Parent Patents

26    were procured by inequitable conduct, rendering them unenforceable in their

27    entirety.  In the applications leading to the Patents-In-Suit and the Parent Patents,

28    Applicants failed to disclose to the USPTO material references relevant to the

- 41 -

OHS West:260677618.3

1   prosecution with intent to deceive. Based on the fact that these references are

2   Applicants' own publications describing the technology at issue in the Patents-In-

3   Suit and the Parent Patents or third-party prior art references cited in such

4   publications as being relevant to Applicants' technology, Applicants were aware of

5   these prior art references and intentionally failed to provide these references with

6   the intent to deceive the USPTO. The references identified as omitted by

7   Applicants herein are illustrative. Canon U.S.A. reserves the right to amend its

8   answer and counterclaims to state additional misrepresentations and/or omissions as

9   it learns of them through the course of discovery in this action.

10      182.   With respect to the '515 patent and the '232 patent Applicants

11  committed inequitable conduct through their failure to cite at least the following

12  exemplary references material to the patentability of these patents: (i) the Kemeny

13  Focal-Plane Article; (ii) the 1991 Fossum Focal-Plane Image Processing Article;

14  (iii) the 1991 Fossum Future Directions Article; (iv) the 1989 Fossum Architecture

15  Article; (v) the 1991 Yadid-Pecht Article; (vi) the 1991 Hynecek Article; (vii) the

16  1991 Kyomasu Article; (viii) the 1990 Andoh Article; (ix) the 1990 Chen Article;

17  (x) the ASIC Vision Article; (xi) the 1992 Forcheimer Article; and (xii) the Fossum

18  Dinosaurs Article.

19      183.   With respect to the '126 patent, the '503 patent, the '059 patent and the

20  '838 patent Applicants committed inequitable conduct through their failure to cite

21  at least each of the exemplary prior art references disclosed in Paragraphs 179 and

22  180 above which are material to the patentability of these patents.

23      184.   With respect to the '122 patent application Applicants committed

24  inequitable conduct through their failure to cite at least each of the exemplary prior

25  art references disclosed in Paragraphs 179 and 180 above (with the exception of the

26  Fossum Camera on a Chip Article, which was cited), which are material to the

27  patentability of this patent.

28      185.   With respect to the applications for the '506 patent and the '483 patent,

- 42 -

1  Applicants committed inequitable conduct through their failure to cite at least each

2  of the exemplary prior art references disclosed in Paragraphs 179 and 180 above

3  (with the exception of the 1994 Mendis Article, which was cited), which are

4  material to the patentability of these patents.

5      186.  With respect to the applications leading to the '842 patent, the '068

6  patent, the '166 patent, the '617 patent, the '326 patent, and the '235 patent,

7  Applicants committed inequitable conduct through their failure to cite at least the

8  following exemplary references material to the patentability of these patents: (i) the

9  Kemeny Focal-Plane Article; (ii) the 1991 Fossum Focal-Plane Image Processing

10  Article; (iii) the 1991 Fossum Future Directions Article; (iv) the 1994 Eid Article;

11  and (v) the Fossum Ultra Low Power Article.

12      187.  With respect to the '842 patent, the '068 patent, the '166 patent, the

13  '617 patent, the '326 patent, and the '235 patent, Applicants committed inequitable

14  conduct by burying certain references.  For example, even though the 1991 Yadid-

15  Pecht Article, the 1991 Kyomasu Article, the 1990 Chen Article, and the 1990

16  Andoh Article were material, the Applicants of the '842 patent and the '068 patent

17  failed to properly disclose these references to the USPTO.  On information and

18  belief, the Applicants buried the references among more than 100 other references

19  with an intent to deceive and/or mislead the USPTO in order to obtain issuance of

20  the '842 patent and the '068 patent.  Also, even though the 1991 Yadid-Pecht

21  Article, the 1991 Kyomasu Article, the 1990 Chen Article, the 1990 Andoh Article,

22  the 1993 Mendis Article, and the 1994 Mendis Article were material, based on

23  information and belief, the Applicants of the '166 patent, the '617 patent, the '326

24  patent, and the '235 patent intentionally failed to properly disclose these references

25  to the USPTO and instead buried these references among many other references

26  which were not as material or relevant.  On information and belief, this was done

27  with intent to deceive the USPTO in order to obtain issuance of the '166 patent, the

28  '617 patent, the '326 patent, and the '235 patent

- 43 -

OHS West:260677618.3

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

188.   In addition to the prior art references related to the Applicants' publications discussed above, the '842 patent is also unenforceable due to inequitable conduct arising from Applicants' failure to properly cite prior art references that were cited by the USPTO during prosecution of the '232 patent (the immediate parent of the '842 patent).

189.   The Examiner of the '232 patent application rejected claims in an Office Action dated July 2, 1997, specifically using the following references: (i) U.S. Patent No. 4,407,010 to Baji et al.; (ii) U.S. Patent No. 5,563,429 to Isogai; (iii) U.S. Patent No. 4,093,782 to Hartman et al.; (iv) U.S. Patent No. 4,155,094 to Ohba et al.; (v) U.S. Patent No. 3,623,132 to Green; (vi) U.S. Patent No. 4,287,441 to Smith; (vii) U.S. Patent No. 4,683,580 to Matsunaga; (viii) U.S. Patent No. 5,323,052 to Koyama; and (ix) JP Pub. No. 5235317 (collectively, "the '232 patent references").

190.   On June 27, 2000, the '842 patent application was filed with substantially identical claims as were previously rejected in the '232 patent application.  A list of references was filed concurrently with the '842 patent application, listing the '232 patent references.  Thereafter, however, in an Office Action the Examiner notified the Applicants that "[t]he list of references in the specification filed on June 27/2000 [sic] is not a proper information disclosure statement.… Therefore, unless the references have been cited by the examiner on form PTO-892, they are not been [sic] considered."  The '232 patent references were never resubmitted in a proper manner, and the Examiner never considered them, as indicated by the fact that the Examiner struck-through the '232 patent references on the list provided with the '842 patent application.

191.   On information and belief, the Applicants therefore intentionally withheld material references from the Examiner during the '842 patent prosecution.  Despite having received express notice of their failure to properly submit the '232 patent references the Applicants still intentionally failed to remedy this material

- 44 -

1    omission.

2    **B.    Omnivision Litigation.**

3    192.  The '068 patent, the '842 patent, the '235 patent, the '617 patent, the

4    '166 patent, the '326 patent, the '059 patent, the '838 patent, and the '122 patent are

5    unenforceable due to inequitable conduct based on the failure of the Applicants to

6    cite to the USPTO the existence of litigations involving the '126 patent and

7    material information arising therefrom.

8    193.  The Manual of Patent Examining Procedure ("MPEP"), in Section

9    2001.06(c), states that: "Where the subject matter for which a patent is sought is or

10   has been involved in litigation, the existence of such litigation and any other

11   material information arising therefrom must be brought to the attention of the

12   Patent and Trademark Office."

13   194.  Section 2001.06(c) of the MPEP was in effect during the litigations

14   involving the '126 patent and during the prosecution of the '068 patent, the '842

15   patent, the '235 patent, the '617 patent, the '166 patent, the '326 patent, the '059

16   patent, the '838 patent, and the '122 patent.

17   195.  On October 13, 2000, Omnivision Technologies Inc. ("Omnivision")

18   filed suit in the United States District Court for the Northern District of California

19   against Photobit Corporation and Caltech seeking a declaratory judgment of non-

20   infringement and invalidity of the '126 patent and other patents (the "Omnivision

21   District Court Litigation").  The Omnivision District Court Litigation advanced

22   through *Markman* briefing in which Caltech and the other parties briefed their

23   respective positions on disputed claim terms in the '126 patent and other patents.

24   For the '126  patent, Caltech briefed its position on the following claim terms that

25   are, in whole or in part, claim terms in the '068 patent, the '842 patent, the '235

26   patent, the '617 patent, the '166 patent, the '326 patent, the '059 patent, the '838

27   patent, and the '122 patent: (i) "A camera on a chip;" (ii) "pixel;" (iii) "light

28   collecting elements which each receive light and store an electronic information in

- 45 -

1    an amount indicative of an amount of light received during an integration period;"

2    (iv) "timing element;" (v) "readout control element;" (vi) "compatible with

3    CMOS;" (vii) "An imaging system on a single substrate;" and (viii) "a latch

4    element storing values to be used in said timing element."  On September 24, 2001,

5    the court dismissed the case with prejudice.  A true and correct copy of the Joint

6    Claim Construction and Prehearing Statement from the Omnivision District Court

7    Litigation, filed on July 10, 2001, is attached hereto as Exhibit Y.  A true and

8    correct copy of Photobit Corporation and California Institute of Technology's

9    Opening Markman Claim Construction Brief from the Omnivision District Court

10   Litigation, filed on August 23, 2001, is attached hereto as Exhibit Z.

11         196.   On or about February 2001, Photobit Corporation and Caltech filed a

12   Section 337 action before the U.S. International Trade Commission ("ITC")

13   seeking an exclusionary order pertaining to products alleged to infringe the '126

14   patent, the '506 patent and a third patent (the "Caltech ITC Action").  Proposed

15   respondents included Omnivision, among others.  The ITC instituted its

16   investigation on or about March 12, 2001 and terminated the proceeding on or

17   about October 30, 2001, as a result of settlement by the parties.  In the Caltech ITC

18   Action, Omnivision alleged inequitable conduct of the '506 Patent.

19         197.   During the pendency of the Omnivision District Court Litigation and

20   the Caltech ITC Action, patent applications that issued as the '842 patent, the '235

21   patent, the '326 patent, the '617 patent, the '838 patent, and the '122 patent were

22   pending before the USPTO.  Patent applications that issued as the '068 patent, the

23   '166 patent, and the '059 patent were filed subsequent to the dismissal of the

24   Omnivision District Court Litigation and termination of the Caltech ITC Action.

25         198.   The named inventor(s), the prosecuting attorney(s), and/or other

26   individual(s) associated with the filing and/or prosecution of applications for the

27   '068 patent, the '842 patent, the '235 patent, the '617 patent, the '166 patent, the

28   '326 patent, the '059 patent, the '838 patent, and the '122 patent were aware of the

- 46 -

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

1    Omnivision District Court Litigation and the Caltech ITC Action during the

2    prosecution of the applications that issued as the '842 patent, the '235 patent, the

3    '326 patent, the '617 patent, the '838 patent, the '122 patent, the '068 patent, the

4    '166 patent, and the '059 patent.

5         199.   At least the existence of the Omnivision District Court Litigation and

6    the Caltech ITC Action and Caltech's positions on claim construction of claim

7    terms and invalidity positions would have been material to the examination of the

8    '068 patent, the '842 patent, the '235 patent, the '617 patent, the '166 patent, the

9    '326 patent, the '059 patent, the '838 patent, and the '122 patent in accordance with

10   37 C.F.R. § 1.56.  Notwithstanding, the named inventor(s), the prosecuting

11   attorney(s), and/or other individual(s) associated with the filing and/or prosecution

12   of applications for the '842 patent, the '235 Patent, the '326 patent, the '617 patent,

13   the '838 patent, the '122 patent, the '068 patent, the '166 patent, and the '059 patent

14   failed to cite the existence of the Omnivision District Court Litigation and the

15   Caltech ITC Action, and material information arising therefrom, in the applications

16   that issued as the '068 patent, the '842 patent, the '235 patent, the '617 patent, the

17   '166 patent, the '326 patent, the '059 patent, the '838 patent, and the '122 patent.

18   On information and belief, the failure to cite such information was with the intent to

19   deceive the USPTO.

20   **III.   INFECTIOUS UNENFORCEABILITY.**

21        200.   On information and belief, the Patents-In-Suit are unenforceable due to

22   inequitable conduct based on the doctrine of infectious unenforceability because the

23   Applicants breached their duty of candor and good faith in dealing with the USPTO

24   by intentionally failing to properly disclose to the USPTO material information

25   and/or documents and/or fraudulently asserting statements to the USPTO with an

26   intent to deceive the USPTO in parent applications to those patents.

27        201.   The '842 patent and the '068 patent are continuations of the '515

28   patent and the '232 patent.  The Applicants' inequitable conduct with respect to the

1   '515 patent and '232 patent, discussed above, renders the '842 patent and '068

2   patent unenforceable based upon infectious unenforceability because the '842

3   patent and the '068 patent bear an immediate and necessary relation to the

4   inequitable conduct. The '842 patent and '068 patent did not face their own

5   substantive rejections over prior art and instead were only rejected based upon the

6   judicially created doctrine of nonstatutory double patenting because they were

7   deemed not patentably distinct from the claims of the '232 patent and the '842

8   patent, respectively.

9       202.   The '235 patent is a continuation of the '126 patent, which itself is a

10  continuation of the '232 patent, which is a continuation-in-part of the '515 patent.

11  The '166 patent, the '617 patent and the '326 patent are divisionals of the '126

12  patent. The Applicants' inequitable conduct with respect to the '126 patent, the

13  '515 patent, and the '232 patent, discussed above, renders the '235 patent, the '166

14  patent, the '617 patent, and the '326 patent unenforceable based upon infectious

15  unenforceability because the '235 patent, the '166 patent, the '617 patent, and the

16  '326 patent bear an immediate and necessary relation to the inequitable conduct. In

17  particular, arguments for the patentability of the '126 patent, the '515 patent and the

18  '232 patent and the failure to properly cite prior art in the prosecution of those

19  patents directly affected the prosecution of the '235 patent, the '166 patent, the '617

20  patent and the '326 patent, which claim similar image sensor structures. Moreover,

21  Applicants' misrepresentations as to the priority claim of the '126 patent directly

22  affected the prosecution of the '235 patent, the '166 patent, the '617 patent and the

23  '326 patent, which claim direct priority thereto.

24      203.   The '838 patent is a continuation of the '768 patent, which itself is a

25  continuation-in-part of the '232 patent, which is a continuation of the '515 patent.

26  The '059 patent is a divisional of the '503 patent, which itself is a continuation-in-

27  part of the '232 patent, which is a continuation of the '515 patent. The '483 patent

28  is a continuation-in-part of the '232 patent, which itself is a continuation of the '515

OHS West:260677618.3

1    patent. Applicants' inequitable conduct with respect to the '515 patent, the '232

2    patent, the '768 patent and the '503 patent, discussed above, renders the '838

3    patent, the '059 patent, and the '483 patent unenforceable based upon infectious

4    unenforceability because the '838 patent, the '059 patent, and the '483 patent bear

5    an immediate and necessary relation to the inequitable conduct.

6    **IV.    EACH CLAIM OF EACH OF THE PATENTS-IN-SUIT**

7    **SHOULD BE DECLARED VOID AND UNENFORCEABLE.**

8         204.   Each claim of U.S. Patent No. 5,990,506 is void and unenforceable

9    because one or more of the inventors and/or the individuals associated with the

10   filing and/or prosecution of the '506 patent engaged in inequitable conduct during

11   the prosecution of the application or applications that matured into the '506 patent

12   and/or during the prosecution of its Parent Patents.

13        205.   Each claim of U.S. Patent No. 6,456,326 is void and unenforceable

14   because one or more of the inventors and/or the individuals associated with the

15   filing and/or prosecution of the '326 patent engaged in inequitable conduct during

16   the prosecution of the application or applications that matured into the '326 patent,

17   and/or during the prosecution of its Parent Patents.

18        206.   Each claim of U.S. Patent No. 6,549,235 is void and unenforceable

19   because one or more of the inventors and/or the individuals associated with the

20   filing and/or prosecution of the '235 patent engaged in inequitable conduct during

21   the prosecution of the application or applications that matured into the '235 patent,

22   and/or during the prosecution of its Parent Patents.

23        207.   Each claim of U.S. Patent No. 6,555,842 is void and unenforceable

24   because one or more of the inventors and/or the individuals associated with the

25   filing and/or prosecution of the '842 patent engaged in inequitable conduct during

26   the prosecution of the application or applications that matured into the '842 patent,

27   and/or during the prosecution of its Parent Patents.

28        208.   Each claim of U.S. Patent No. 6,570,617 is void and unenforceable

- 49 -

1  because one or more of the inventors and/or the individuals associated with the

2  filing and/or prosecution of the '617 patent engaged in inequitable conduct during

3  the prosecution of the application or applications that matured into the '617 patent,

4  and/or during the prosecution of its Parent Patents.

5      209.   Each claim of U.S. Patent No. 6,744,068 is void and unenforceable

6  because one or more of the inventors and/or the individuals associated with the

7  filing and/or prosecution of the '068 patent engaged in inequitable conduct during

8  the prosecution of the application or applications that matured into the '068 patent,

9  and/or during the prosecution of its Parent Patents.

10      210.   Each claim of U.S. Patent No. 5,949,483 is void and unenforceable

11  because one or more of the inventors and/or the individuals associated with the

12  filing and/or prosecution of the '483 patent engaged in inequitable conduct during

13  the prosecution of the application or applications that matured into the '483 patent,

14  and/or during the prosecution of its Parent Patents.

15      211.   Each claim of U.S. Patent No. 6,606,122 is void and unenforceable

16  because one or more of the inventors and/or the individuals associated with the

17  filing and/or prosecution of the '122 patent engaged in inequitable conduct during

18  the prosecution of the application or applications that matured into the '122 patent.

19      212.   Each claim of U.S. Patent No. 6,943,838 is void and unenforceable

20  because one or more of the inventors and/or the individuals associated with the

21  filing and/or prosecution of the '838 patent engaged in inequitable conduct during

22  the prosecution of the application or applications that matured into the '838 patent,

23  and/or during the prosecution of its Parent Patents.

24      213.   Each claim of U.S. Patent No. 6,825,059 is void and unenforceable

25  because one or more of the inventors and/or the individuals associated with the

26  filing and/or prosecution of the '059 patent engaged in inequitable conduct during

27  the prosecution of the application or applications that matured into the '059 patent,

28  and/or during the prosecution of its Parent Patents.

- 50 -

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

1    214.   Each claim of U.S. Patent No. 7,369,166 is void and unenforceable

2  because one or more of the inventors and/or the individuals associated with the

3  filing and/or prosecution of the '166 patent engaged in inequitable conduct during

4  the prosecution of the application or applications that matured into the '166 patent,

5  and/or during the prosecution of its Parent Patents.

6    215.   Caltech, by way of Plaintiff's First Amended Complaint, has raised

7  legal and factual questions as to Canon U.S.A.'s alleged infringement of these

8  certain patents.  To resolve these questions and to afford Canon U.S.A. relief from

9  the uncertainty and controversy raised by Caltech's allegations and Plaintiff's First

10  Amended Complaint, Canon U.S.A. is entitled to a declaratory judgment that each

11  claim of the '506 patent, the '326 patent, the '235 patent, the '842 patent, the '617

12  patent, the '068 patent, the '483 patent, the '122 patent, the '838 patent, the '059

13  patent and the '166 patent are void and unenforceable because one or more of the

14  inventors and/or the individuals associated with the filing and/or prosecutions of

15  these patents engaged in inequitable conduct during the prosecution of the

16  application or applications that matured into these patents and/or during the

17  prosecution of their parent applications.

18                    **Prayer For Relief on Counterclaims**

19        Wherefore, Canon U.S.A. respectfully requests that this Court enter

20  judgment in its favor and grant the following relief:

21        (a)    A declaration that Canon U.S.A. is not infringing and has not infringed

22               any claim of any of the Patents-In-Suit alleged by Caltech;

23        (b)    A declaration that all claims of the Patents-In-Suit alleged by Caltech

24               are invalid;

25        (c)    A declaration that all of the Patents-In-Suit alleged by Caltech are

26               unenforceable;

27        (d)    That all of Caltech's claims are dismissed in their entirety with

28               prejudice;

- 51 -

1    (e)    A declaration that Caltech shall take nothing by way of its Complaint;

2    (f)    A finding that this is an exceptional case and warranting the award to

3           Canon U.S.A. of its reasonable attorney fees pursuant to 35 U.S.C. §

4           285 and any other applicable statutes, rules, or laws;

5    (g)    That Canon U.S.A. be awarded pre- and post-judgment interest and

6           that such interest be awarded at the highest legal rate from and after

7           the date of service of the initial complaint in this action;

8    (h)    That Canon U.S.A. recover its costs in this suit; and

9    (i)    That such additional relief as the Court may deem just and proper

10          under the circumstances be awarded.

11

12

13   Dated: June 23, 2009                Respectfully submitted,

14                                       ORRICK, HERRINGTON & SUTCLIFFE LLP

15

16   _____
                                         Seth E. Freilich

17                                       Seth E. Freilich (State Bar No. 217321)
                                         777 South Figueroa Street, Suite 3200
18                                       Los Angeles, California 90017-5855
                                         Tel.: (213) 629-2020
19                                       Fax: (213) 612-2499

20                                       Joseph A. Calvaruso (*Pro Hac Vice*)
                                         Rodger A. Sadler (*Pro Hac Vice*)
21                                       Richard Martinelli (*Pro Hac Vice*)
                                         666 Fifth Avenue
22                                       New York, New York 10103
                                         Tel.: (212) 506-5000
23                                       Fax: (212) 506-5151

24                                       Attorneys for Defendant and Counterclaimant
                                         Canon U.S.A. Inc. and Defendant Canon Inc.

25

26

27

28

OHS West:260677618.3

- 52 -

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS

1

## **DEMAND FOR JURY TRIAL**

2        Defendant and Counterclaim Plaintiff Canon U.S.A., Inc. and Defendant

3  Canon Inc. hereby demand a trial by jury for all claims and issues so triable in this

4  action.

5

6  Dated: June 23, 2009          Respectfully submitted,

7                     ORRICK, HERRINGTON & SUTCLIFFE LLP

8

9                            Seth E. Freilich

10           Seth E. Freilich (State Bar No. 217321)

11          777 South Figueroa Street, Suite 3200
Los Angeles, California  90017-5855
Tel.: (213) 629-2020

12          Fax: (213) 612-2499

13          Joseph A. Calvaruso (*Pro Hac Vice*)
Rodger A. Sadler (*Pro Hac Vice*)

14          Richard Martinelli (*Pro Hac Vice*)
666 Fifth Avenue

15          New York, New York 10103
Tel.: (212) 506-5000

16          Fax: (212) 506-5151

17          Attorneys for Defendant and Counterclaimant
Canon U.S.A. Inc. and Defendant Canon Inc.

18

19

20

21

22

23

24

25

26

27

28

OHS West:260677618.3

CANON U.S.A., INC. AND CANON INC.'S ANSWER AND CANON U.S.A.'S COUNTERCLAIMS